**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WILLIAM P. CASTILLO,

      Petitioner,                        2:04-cv-00868-RCJ-GWF

vs.

                                     **ORDER**

RENEE BAKER, *et al.*,

      Respondents.

_____/

Introduction

      This action is a petition for a writ of habeas corpus by William P. Castillo, a Nevada prisoner sentenced to death.  There are, before the court, a motion by respondents to dismiss Castillo's second amended habeas petition, and motions by Castillo for leave to conduct discovery and for an evidentiary hearing.  In this order, the court resolves those motions, granting respondents' motion to dismiss in part and denying it in part, and denying Castillo's motions for leave to conduct discovery and for an evidentiary hearing.

Background Facts and Procedural History

      The following is the statement of the facts underlying this case, as disclosed by the evidence at trial, as well as the procedural history of the case, as set forth by the Nevada Supreme Court in its order affirming the judgment of conviction:

In late November 1995, appellant William Patrick Castillo held a job as a roofer in Las Vegas. Harry Kumma, a former co-worker, contacted Castillo and two other roofing employees, Kirk Rasmussen and Jeff Donovan, about completing a side job. The side job involved re-roofing the residence of the victim, Isabelle Berndt.

Kumma, Rasmussen, Donovan, and Castillo worked on Berndt's roof on November 25, 1995. While performing ground cleanup at Berndt's residence, Castillo indicated to Donovan that he found a key to Berndt's home and wanted to enter. Donovan told Castillo that he should not and directed Castillo to return the key to the place where he found it. In response, Castillo stated "I'll just come back later at nighttime."

At some time during the roofing job, Castillo asked Kumma to lend him $500 so that Castillo could pay his lawyer for services rendered in connection with an unrelated criminal battery charge. Kumma did not lend Castillo the money.

Prior to these events, Castillo began residing with his girlfriend, Tammy Jo Bryant, and a friend, Michelle Platou. At about 6:00 p.m. on December 16, 1995, Castillo left the apartment with Platou in Platou's car. The two returned to the apartment at approximately 3:00 a.m. on the morning of December 17, 1995, with a VCR, a box containing silverware, and a bag containing knit booties. A few minutes later, Castillo and Platou again departed. They returned about twenty minutes later.

At about 9:00 or 10:00 a.m. on December 17, 1995, Castillo and Platou allegedly informed Bryant that they had committed a robbery and stolen several items. According to Bryant, Castillo and Platou further informed her that while in the house, Platou inadvertently bumped into a wall and made some noise. Castillo and Platou allegedly told Bryant that Castillo then hit a sleeping person with a tire iron Castillo brought into the house. The two then departed the scene. According to Bryant, they further stated that, out of fear that they left incriminating fingerprints on the wall of the house, they returned to the residence at 3:00 a.m. to burn down the house.

In the early morning hours of December 17, 1995, neighbors notified the police that Berndt's residence was ablaze. Firefighters found Berndt's body inside the house. An arson investigator determined that two independent fires, set by "human hands," using some type of accelerant, caused the blaze. Investigators found a charred bottle of lighter fluid at the scene and several spots in the living room where an accelerant was present. Laboratory tests confirmed these findings.

According to the coroner's autopsy report, Berndt suffered "multiple crushing-type injuries with lacerations of the head, crushing injuries of the jaws," and several broken teeth. Berndt also had deep lacerations on the back of the head and injuries to the face and ears. According to the coroner, all injuries were contemporaneous. The coroner testified that Berndt died as a result of an intracranial hemorrhage due to blunt force trauma to the face and head. The coroner further testified that these injuries were consistent with blows from a crowbar or tire iron.

A Las Vegas Metropolitan Police Department crime analyst investigated Berndt's residence and observed fire, smoke and water damage in the living room, kitchen and master bedroom. He noted that dresser drawers had been opened, two jewelry boxes had been opened, and the house had been "ransacked." The crime

analyst also observed blood marks on the wall next to Berndt's body, which was found lying on a bed.

On December 17, 1995, Berndt's only child, Jean Marie Hosking, arrived at Berndt's residence. She searched the house and determined that her mother's silverware was missing. This silverware featured a distinctive floral pattern, had an engraved "B" on each piece, and was stored in a wooden box on the shelf in Berndt's bedroom. Also missing were a VCR, Christmas booties Berndt was knitting for her grandchildren, and eight $50 U.S. savings bonds.

On December 19, 1995, Rasmussen, one of Castillo's coworkers, contacted the police. According to Rasmussen, during the carpool to work on December 18, 1995, Castillo said, "This weekend I murdered an 86-year-old lady in her sleep." Castillo also allegedly stated that he entered Berndt's house with the intent to steal Berndt's valuables, hit Berndt numerous times with a tire iron, and heard her "gurgling" in her own blood, before he put a pillow over her head to smother her. Castillo also allegedly told Rasmussen that he had stolen a VCR, money, and silverware and that he intended to sell these items to raise money to pay his attorney.

The following morning, Castillo allegedly told Rasmussen that the crime had been reported on the news. On December 19, Rasmussen drove by Berndt's residence, saw that it had been burned, and contacted the police to report what he had learned.

On the evening of December 19, 1995, Charles McDonald, another roofer, visited Castillo's apartment. Castillo offered to sell a set of silverware to McDonald for $500. McDonald testified that the silverware was in a wooden box. When McDonald later viewed Berndt's silverware, he noted that it appeared to be the same silverware that Castillo tried to sell to him.

Based upon the information provided by Rasmussen, police obtained and executed a search warrant on the apartment shared by Castillo, Bryant, and Platou at 10:00 p.m. on December 19, 1995. Castillo and Bryant were present when the police arrived and permitted them to enter; both Castillo and Bryant gave their consent to a search of their apartment. Police recovered the silverware, the VCR, the booties, and a bottle of lighter fluid from the apartment. The officers also located a notebook with the notation "$50, VCR, $75, camera, silverware."

After execution of the search warrant, the officers arrested Castillo. At the detective bureau, Castillo waived his Miranda rights and made statements during two separate, consecutive interviews. During the first interview, Castillo indicated that he had received the VCR and other property from a friend. Shortly after the first interview ended, the detectives returned and informed Castillo of the evidence that had been obtained against him from Bryant and Rasmussen. Castillo then confessed to the killing, robbery, and arson.

Subsequently, Castillo pleaded not guilty on all counts, and a jury trial commenced August 26 and concluded on September 4, 1996. The prosecution presented all the evidence cited above in its case in chief. The defense did not put on a case in chief. The jury returned guilty verdicts on all counts: conspiracy to commit burglary, burglary, robbery of a victim sixty-five years or older, first degree murder

3

1    with use of a deadly weapon, conspiracy to commit burglary and arson, and
     first-degree arson.

2

3            Castillo's penalty hearing took place from September 19 to September 24,
     1996.  Bruce Kennedy of the Nevada Youth Parole Board testified about Castillo's
     extensive juvenile history and record.  Kennedy became acquainted with Castillo in

4    1984 while Kennedy was a parole counselor at the Nevada Youth Training Center in
     Elko.  Kennedy's testimony revealed:  (1) Castillo began running away from home

5    regularly when he was nine years old, (2) by 1984, Castillo had already been charged
     with attempted murder, petty larceny, and six counts of arson (including an incident

6    in which he tried to burn down the Circus Circus Hotel in Las Vegas), and (3) much
     of Castillo's criminal misbehavior remained uncharged.  Kennedy also testified that,

7    by the age of fifteen, Castillo had already used marijuana, speed, cocaine, and alcohol.

8            Due to his extensive misbehavior, Castillo participated in numerous Nevada
     state juvenile programs, lived with family members in different areas of the country

9    for short periods of time and ultimately returned to Nevada.  During his adolescence,
     doctors determined that Castillo understood the difference between right and wrong,

10   did not suffer from a neurological disorder, but suffered from a personality disorder.

11           Other State witnesses testified that in 1990, at age seventeen, Castillo escaped
     from a Nevada youth training facility; Castillo was arrested for attempted burglary

12   and later certified to adult status on charges arising from this incident.  Castillo served
     fourteen months in prison, expiring his term.  In April 1993, Castillo was convicted of

13   robbery arising from an incident which occurred in December 1992.  Castillo had a
     gun during that robbery.  Castillo was sentenced to three years, served just under two

14   years, committed multiple disciplinary infractions while in prison, and was released in
     May 1995.

15

16           In June 1995, Castillo participated in the armed robbery of a cashier, but was
     not formally charged.  In December 1995, Castillo was charged with battery upon one

17   of his neighbors.  These charges were pending at the time of the instant trial.

18           After this extensive testimony about Castillo's prior criminal behavior, the
     State introduced victim impact evidence through testimony by Berndt's

19   granddaughters and Berndt's daughter, Hosking.  These individuals testified about
     their personal interaction with Berndt, the quality of Berndt's life, and the effect of

20   Berndt's death on their lives.

21           The first defense witness, a neuropsychologist, testified that Castillo: had been
     emotionally, mentally, physically and behaviorally abused; suffered from "reactive

22   attachment disorder" and "attention deficit hyperactivity disorder;" and came from a
     dysfunctional family.  One correctional officer and one juvenile facility counselor

23   testified as to several positive episodes regarding Castillo.

24           Thereafter, Castillo's girlfriend, Bryant, testified that Castillo had few social
     skills, acted like a "big kid," but was trying to improve. Castillo's mother testified

25   that Castillo had a difficult upbringing due to the physical and emotional abuse he
     received from his biological father, her own lack of affection for Castillo, and the

26   family's instability.  At the hearing's conclusion, Castillo read an unsworn statement
     to the jury expressing his feelings including regret and remorse concerning his
     conduct.

1

2          The jury returned a verdict of death, finding four aggravating circumstances and three mitigating circumstances. The jury found that the aggravating

3    circumstances were that the murder was committed: (1) by a person previously convicted of a felony involving the use or threat of violence, specifically, a robbery committed on December 14, 1992; (2) while Castillo was committing burglary;

4    (3) while Castillo was committing robbery; and (4) to avoid or prevent a lawful arrest. The jury found the following mitigating circumstances: (1) the youth of the defendant

5    at the time of the crime; (2) the murder was committed while the defendant was under the influence of extreme emotional distress or disturbance; and (3) any other mitigating circumstances.

6

7    *Castillo v. State*, 114 Nev. 271, 273-77, 956 P.2d 103, 105-07 (1998).

8          Castillo was sentenced, in Nevada's Eighth Judicial District Court (Clark County), on

9    November 4, 1996, as follows: to 28 to 72 months in prison on Count I, conspiracy to commit

10   burglary and/or robbery; to 48 to 120 months in prison on Count II, burglary; to 72 to 180 months

11   in prison, plus a consecutive term of 72 to 180 months, for the elderly victim enhancement, on

12   Count III, robbery, victim sixty-five years, or older; to death by lethal injection on Count IV, murder

13   with use of a deadly weapon; to 28 to 72 months in prison on Count V, conspiracy to commit

14   burglary and arson; to 48 to 120 months in prison on Count VI, burglary; and to 72 to 180 months in

15   prison on Count VII, first degree arson. *See* Judgment of Conviction, Respondents' Exhibit 97.[1]

16   All the sentences run consecutively. *See id*. The Nevada Supreme Court affirmed the judgment of

17   conviction on April 2, 1998. *See Castillo v. State*, 114 Nev. 271, 956 P.2d 103 (1998) (respondents

18   filed a copy of the opinion as Respondents' Exhibit 112.). The Nevada Supreme Court denied

19   Castillo's petition for rehearing on November 25, 1998. *See* Order Denying Rehearing,

20   Respondents' Exhibit 122. The United States Supreme Court denied Castillo's petition for writ of

21   certiorari on March 22, 1999. *See Castillo v. Nevada*, 526 U.S. 1031 (1999); Letter Regarding

22   Denial of Petition for Writ of Certiorari, Respondents' Exhibit 129. The Nevada Supreme Court

23   issued its remittitur on April 28, 1999. *See* Remittitur, Respondents' Exhibit 134.

24

25

26       [1] The exhibits referred to in this order as "Respondents' Exhibits" were filed by respondents and are found in the record at ECF Nos. 87-94, and 141-144. The exhibits referred to in this order as "Petitioner's Exhibits" were filed by Castillo and are found in the record at ECF Nos. 127-133.

1    On April 2, 1999, Castillo filed, a petition for writ of habeas corpus in the state district court.

2   *See* Petition for Writ of Habeas Corpus (Post-Conviction), Respondents' Exhibit 130.  The court

3   appointed counsel to represent Castillo, and, with counsel, Castillo filed a supplemental brief in

4   support of his habeas petition on October 12, 2001.  *See* Supplemental Brief in Support of

5   Defendant's Petition for Writ of Habeas Corpus (Post-Conviction), Respondents' Exhibit 155.  The

6   court held an evidentiary hearing on August 2, 2002.  *See* Recorder's Transcript, Respondents'

7   Exhibit 166.  On September 27, 2002, Castillo filed a second supplemental brief in support of his

8   habeas petition.  *See* Second Supplemental Brief in Support of Defendant's Post Conviction Petition

9   for Writ of Habeas Corpus, Respondents' Exhibit 168.  On January 22, 2003, the court heard oral

10  argument, and then denied Castillo's petition.  *See* Recorder's Transcript, Respondents' Exhibit 171.

11  The court filed its written order, denying Castillo's petition, on June 11, 2003.  *See* Findings of Fact,

12  Conclusions of Law and Order, Respondents' Exhibit 183.  Castillo appealed.  *See* Notice of Appeal,

13  Respondents' Exhibit 172.  The Nevada Supreme Court affirmed the denial of Castillo's petition

14  on February 5, 2004.  *See* Order of Affirmance, Respondents' Exhibit 198.  The United States

15  Supreme Court denied Castillo's petition for a writ of certiorari on October 4, 2004.  *See* Letter

16  Regarding Denial of Petition for Writ of Certiorari, Respondents' Exhibit 208; *see also* Order of the

17  Supreme Court, Respondents' Exhibit 209.  The Nevada Supreme Court issued its remittitur on

18  October 27, 2004.  *See* Remittitur, Respondents' Exhibit 211.

19    Castillo mailed a *pro se* petition for writ of habeas corpus to this court, and initiated this case,

20  on June 22, 2004.  *See* Petition for Writ of Habeas Corpus (ECF No. 1).  Castillo's single claim in

21  his original petition stated:  "I allege that my state court conviction and/or sentence are

22  unconstitutional, in violation of my Constitutional Rights, by incorporating herein the Constitutional

23  claims contained in Exhibits 1 through 4 attached hereto."  *See id*. at 3.  Attached to Castillo's

24  original petition as exhibits were the Nevada Supreme Court's order affirming the denial of

25  Castillo's first state habeas petition, Castillo's opening brief on his direct appeal, Castillo's reply

26

1   brief on his direct appeal, Castillo's opening brief on the appeal in his first state habeas action, and

2   Castillo's reply brief on the appeal in his first state habeas action.  *See id.*

3         On July 7, 2004, this court appointed counsel to represent Castillo.  *See* Order entered

4   July 7, 2004 (ECF No. 4); *see also* Notice of Acceptance of Appointment as Counsel (ECF No. 7).

5         On November 15, 2005, Castillo filed a motion for leave to conduct discovery (ECF Nos. 22,

6   35).  The court granted in part, and denied in part, Castillo's motion for leave to conduct discovery.

7   *See* Order entered June 15, 2006 (ECF No. 38).  In particular, the court denied Castillo leave of court

8   to conduct discovery regarding claims not exhausted in state court.  *See id.*  Castillo moved for

9   reconsideration of the court's ruling on his discovery motion, and the court denied the motion for

10   reconsideration on January 3, 2007 (ECF No. 48).  The discovery was concluded by March 2, 2007.

11   *See* Order entered January 3, 2007 (ECF No. 48).

12         On July 30, 2007, Castillo filed, *pro se*, a notice (ECF No. 51) requesting that this action be

13   dismissed and his death sentence carried out.  The court held a hearing regarding Castillo's request

14   on August 13, 2007.  *See* Minutes of Proceedings (ECF No. 55).  The court treated Castillo's notice

15   as a request for voluntary dismissal, and granted that request, dismissing the case, without prejudice,

16   on September 6, 2007.  *See* Order entered September 4, 2007 (ECF No. 57).  Judgment was entered

17   September 6, 2007 (ECF No. 58).  After an apparent change of heart, on May 7, 2008, Castillo

18   moved to reinstate his federal habeas petition (ECF No. 59).  The court granted Castillo's motion,

19   and vacated the September 6, 2007 judgment (ECF No. 62).

20         On December 15, 2008, Castillo filed a first amended petition for writ of habeas corpus

21   (ECF No. 70).

22         On June 5, 2009, respondents filed a motion to dismiss Castillo's first amended habeas

23   petition (ECF No. 85).  In response, Castillo filed a motion for stay of this action (ECF No. 98).

24   On January 21, 2010, the court granted Castillo's motion for stay, and stayed this action pending the

25   conclusion of his second state habeas action  (ECF No. 106).

26

1    On September 18, 2009, Castillo initiated, in the state district court, his second state habeas

2    action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Respondents' Exhibit 222.  On

3    April 9, 2010, the court heard oral arguments, and then denied Castillo's petition. *See* Recorder's

4    Transcript, Respondents' Exhibit 245.  The court filed its written ruling, denying Castillo's petition,

5    on May 12, 2010. *See* Findings of Fact, Conclusions of Law and Order, Respondents' Exhibit 247.

6    Castillo appealed. *See* Notice of Appeal, Respondents' Exhibit 249.  On July 18, 2013, the Nevada

7    Supreme Court affirmed the denial of Castillo's second state habeas petition. *See* Order of

8    Affirmance, Respondents' Exhibit 268.  The Nevada Supreme Court denied Castillo's petition for

9    rehearing on November 22, 2013. *See* Order Denying Rehearing, Respondents' Exhibit 270.  The

10   Nevada Supreme Court's remittitur issued on December 17, 2013. *See* Remittitur, Respondents'

11   Exhibit 271.

12   On December 16, 2013, Castillo moved to lift the stay of this case, reporting that the state

13   court proceedings had been completed (ECF No. 118).  The court granted that motion, and lifted the

14   stay on January 10, 2014 (ECF No. 120).

15   On May 19, 2014, Castillo filed his second amended petition for writ of habeas corpus

16   (ECF No. 126), which is now the operative petition in this case.  Castillo's second amended petition

17   sets forth the following claims:

18       1.    Castillo's federal constitutional rights were violated because of ineffective
             assistance of counsel.

19

20           I.    guilt phase of trial

21               A.    Castillo's trial counsel was ineffective with respect to handling
                     of the jury selection process, and appellate counsel was
                     ineffective for not raising this issue.

22

23               B.    Castillo's trial counsel was ineffective for failure to present a
                     psychological defense.

24           II.   penalty phase of trial

25               A.    Castillo's trial counsel was ineffective for failure to investigate,
                     identify, and present mitigating evidence.

26

1                B.      Castillo's trial counsel was ineffective for failure to object to improper vouching of third party witnesses.

C.      Castillo's trial counsel was ineffective for failure to adequately prepare witnesses for cross-examination.

2.      Castillo's federal constitutional rights were violated because the prosecutors used the same acts to support a conviction for first degree murder and to support one or more aggravating factors, and trial and appellate counsel were ineffective for failing to raise this issue.

3.      Castillo's federal constitutional rights were violated because the trial judge failed to properly instruct the jury.

      I.      guilt phase of trial

            A.      The trial court failed to properly instruct the jury regarding the elements of first degree murder.

B.      The trial court failed to properly instruct the jury regarding reasonable doubt.

C.      The trial court failed to properly instruct the jury regarding malice aforethought, and appellate counsel was ineffective for failing to raise this issue.

      II.     penalty phase of trial

            A.      The trial court failed to give a presumption of life instruction.

B.      The trial court failed to properly instruct the jury regarding reasonable doubt, and trial counsel was ineffective for failing to raise this issue.

C.      The trial court failed to instruct the jury that it could consider other bad act evidence only after it found that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt, and appellate counsel was ineffective for failing to raise this issue.

4.      Castillo's federal constitutional rights were violated because the prosecutor's non-statutory aggravating evidence included juvenile offenses and juvenile misconduct, and trial and appellate counsel were ineffective for failing to raise this issue.

5.      Castillo's federal constitutional rights were violated, in the penalty phase of his trial, as a result of presentation of criminal juvenile records, and trial counsel was ineffective for failing to raise this issue.

6. Castillo's federal constitutional rights were violated because prosecutors introduced evidence in the penalty phase of trial that Castillo held racist "white supremacist" beliefs, and trial and appellate counsel were ineffective for failing to raise this issue.

7. Castillo's federal constitutional rights were violated because of prosecutorial misconduct in the penalty phase of the trial.

    II. A.  The prosecutor identified mitigating factors that Castillo did not raise or introduce evidence to support, and trial and appellate counsel were ineffective for failing to raise this claim.

    II. B.  The prosecutor argued that Castillo was an improbable candidate for rehabilitation, and trial and appellate counsel were ineffective for failing to raise this claim.

    II. C.  The prosecutor forced jurors to choose between executing Castillo or an innocent future victim, and trial and appellate counsel were ineffective for failing to raise this claim.

8. Castillo's federal constitutional rights were violated because the prosecutors introduced unduly prejudicial victim impact testimony.

    II. A.  The prosecutors introduced irrelevant and prejudicial victim impact evidence during the guilt phase of the trial.

    IV.  The prosecutors introduced unduly prejudicial victim impact testimony during the penalty phase of the trial.

9. Castillo's federal constitutional rights were violated because the trial judge allowed the prosecutor to elicit testimony regarding Castillo's other criminal acts.

10. Castillo's federal constitutional rights were violated because of the trial court's failure to record critical proceedings, and trial counsel was ineffective for failing to raise this issue.

11. Castillo's federal constitutional rights were violated because Nevada's deadly weapon enhancement statute was vague and over-broad, and trial and appellate counsel were ineffective for failing to raise this issue.

12. Castillo's federal constitutional rights were violated because his sentence was enhanced based on Nevada's deadly weapon enhancement statute when neither the jury verdict nor the indictment supported such enhancement, and trial and appellate counsel were ineffective for failing to raise this issue.

13. Castillo's federal constitutional rights were violated because Nevada's lethal injection scheme constitutes cruel and unusual punishment.

10

14.   Castillo's death sentence is in violation of his federal constitutional rights due to the restrictive conditions on Nevada's death row and delay caused by ineffective assistance of his trial and appellate counsel, and appellate counsel was ineffective for failing to raise this issue.

15.   Castillo's federal constitutional rights were violated because his trial, sentencing, and review on direct appeal were conducted before state judicial officers whose tenure in office was not dependent on good behavior but was rather dependent on popular election, and who failed to conduct fair and adequate appellate review.

16.   Castillo's federal constitutional rights were violated because of the arbitrariness of Nevada's capital sentencing scheme.

17.   Castillo's death sentence is in violation of his federal constitutional rights because executing a mental ill, cognitively distressed individual constitutes cruel and unusual punishment.

18.   Castillo's federal constitutional rights were violated because the trial judge, in his instructions to the jury, and the prosecutor, during arguments, limited the jury's consideration of Castillo's theory of mitigating factors.

19.   Castillo's federal constitutional rights were violated because of the cumulative errors in his trial, appeal and state post-conviction proceedings.

Second Amended Petition (ECF No. 126), pp. 29-228.[2]

On November 19, 2014, respondents filed their motion to dismiss Castillo's second amended petition (ECF No. 140), arguing that various claims in the second amended petition are barred by the statute of limitations, unexhausted, barred by the procedural default doctrine, and not cognizable in this federal habeas corpus action.

On May 29, 2015, Castillo filed his opposition to the motion to dismiss (ECF No. 154), along with his motion for evidentiary hearing (ECF No. 156), requesting an evidentiary hearing in connection with his opposition to the motion to dismiss.  And, on June 23, 2015, Castillo filed his motion for leave to conduct discovery (ECF No. 161).

---

[2] Consistent with the parties' briefing, the court identifies Castillo's subclaims by the numbering and lettering of the sections of his second amended petition in which they are primarily presented.  The numbering and lettering of the subclaims is, therefore, not consistent or consecutive.

1     On October 6, 2015, respondents filed their reply in support of their motion to dismiss (ECF

2   No. 172), an opposition to Castillo's motion for evidentiary hearing (ECF No. 174), and an

3   opposition to Castillo's motion for leave to conduct discovery (ECF No. 176).

4     On December 12, 2015, Castillo filed a reply in support of his motion for evidentiary hearing

5   (ECF No. 180), and a reply in support of his motion for leave to conduct discovery (ECF No. 182).

6   <u>Discussion</u>

7     <u>Statute of Limitations</u>

8       <u>Legal Standards</u>

9     Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a

10   one-year statute of limitations applicable to federal habeas corpus petitions.  The statute provides:

11   (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State court.  The
12   limitation period shall run from the latest of --

13       (A) the date on which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such review;

14

15       (B) the date on which the impediment to filing an application created by State
action in violation of the Constitution or laws of the United States is removed,
if the applicant was prevented from filing by such State action;

16

17       (C) the date on which the constitutional right asserted was initially recognized
by the Supreme Court, if the right has been newly recognized by the Supreme
Court and made retroactively applicable to cases on collateral review; or

18

19       (D) the date on which the factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.

20   28 U.S.C. § 2244(d)(1)(A-D).

21     The petitioner is entitled to statutory tolling of the limitations period while a "properly filed

22   application for State post-conviction or other collateral review with respect to the pertinent judgment

23   or claim is pending."  28 U.S.C. § 2244(d)(2).

24       <u>Expiration of the Limitations Period in this Case</u>

25     Castillo's conviction became final on March 22, 1999, when the United States Supreme

26   Court denied his petition for a writ of certiorari.  *See Castillo v. Nevada*, 526 U.S. 1031 (1999);

12

1    Letter Regarding Denial of Petition for Writ of Certiorari, Respondents' Exhibit 129.  The one-year

2    limitations period for Castillo's federal habeas petition began running on that date.

3           Castillo filed his first state habeas petition eleven days later, on April 2, 1999.  There is no

4    question that Castillo's first state habeas action was "properly filed," such that it tolled the

5    limitations period, under 28 U.S.C. § 2244(d)(2), after only eleven days ran against the limitations

6    period.  Castillo's first state habeas action was concluded, and the statutory tolling ended, when the

7    Nevada Supreme Court issued its remittitur on October 27, 2004, after affirming the denial of relief

8    in Castillo's action.  *See* Remittitur, Respondents' Exhibit 211.  The running of the limitations period

9    resumed on that date.

10          Therefore, without any equitable tolling, the one-year limitations period ran out 354 days

11   later, on October 16, 2005.

12          Castillo mailed his original *pro se* habeas petition to this court for filing on June 22, 2004,

13   before the Nevada Supreme Court issued its remittitur, concluding Castillo's first state habeas action.

14   *See* Petition for Writ of Habeas Corpus (ECF No. 1).  Under the "mailbox rule," the court considers

15   the petition to have been filed on that date.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988); Rule

16   3(d) of the Rules Governing Section 2254 Cases in the United States District Courts.  Castillo's

17   original petition in this action was unquestionably timely-filed.

18          However, without equitable tolling, Castillo's first amended petition, and his second

19   amended petition, were untimely.  The pendency of Castillo's federal habeas action did not toll the

20   limitations period.  *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (no tolling for the pendency

21   of a federal habeas petition).  Castillo's first amended petition was filed on December 15, 2008,

22   which was 1156 days -- 3 years, 1 month, and 29 days -- after the limitations period expired.

23   *See* First Amended Petition (ECF No. 70).  Castillo's second amended petition was filed on

24   May 19, 2014, which was 3137 days -- 8 years, 7 months, and 3 days -- after the limitations period

25   expired.  *See* Second Amended Petition (ECF No. 126).

26

1          <u>Relation Back of Claims to Original Petititon</u>

2          The question of the timeliness of the claims asserted in Castillo's second amended petition

3    turns on whether those claims relate back to the filing of Castillo's original petition.

4          Claims in an amended petition for writ of habeas corpus relate back to the original petition,

5    under Federal Rule of Civil Procedure 15(c), if they arise out of "a common 'core of operative facts'

6    uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005). "An

7    amended habeas petition ... does not relate back ... when it asserts a new ground for relief supported

8    by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

9          Castillo's original petition asserted a single claim, stating: "I allege that my state court

10   conviction and/or sentence are unconstitutional, in violation of my Constitutional Rights, by

11   incorporating herein the Constitutional claims contained in Exhibits 1 through 4 attached hereto."

12   Petition for Writ of Habeas Corpus (ECF No. 1), p. 3.  Attached to the original petition, as exhibits,

13   were the Nevada Supreme Court's order affirming the denial of Castillo's first state habeas petition,

14   Castillo's opening brief on his direct appeal, Castillo's reply brief on his direct appeal, Castillo's

15   opening brief on the appeal in his first state habeas action, and Castillo's reply brief on the appeal in

16   his first state habeas action (*see id.*); therefore, the court looks to those documents to determine

17   which claims in Castillo's second amended petition relate back to the filing of his original petition.

18                              Claim 1

19         In Claim 1 of his second amended petition, Castillo claims that his federal constitutional

20   rights were violated because of ineffective assistance of counsel. *See* Second Amended Petition,

21   pp. 29-106.  Claim 1 includes five discrete subclaims.

22         Claim 1(I)(A) is a claim that Castillo was denied his federal constitutional rights because his

23   trial counsel was ineffective in the guilt phase of his trial with regard to handling of the jury selection

24   process, and his appellate counsel was ineffective for not raising this issue. *See* Second Amended

25   Petition, pp. 30-31.  No claim with the same core of operative facts as this claim was raised in

26   Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action,

                                         14

1    which briefing was incorporated into his original petition in this action.  *See* Respondents' Exhibits

2    108 (opening brief on direct appeal), 111 (reply brief on direct appeal), 191(opening brief on appeal

3    in first state habeas action), 197 (reply brief on appeal in first state habeas action), and 198 (order of

4    affirmance on appeal in first state habeas action).  Claim 1(I)(A does not relate back to the filing of

5    Castillo's original petition.

6         Claim 1(I)(B) is a claim that Castillo was denied his federal constitutional rights because his

7    trial counsel was ineffective in the guilt phase of his trial for failure to present a psychological

8    defense.  *See* Second Amended Petition, pp. 31-35.  Castillo asserted a similar claim -- one with the

9    same core of operative facts -- on the appeal in his first state habeas action.  *See* Respondents'

10   Exhibit 191, pp. 41-47; Respondents' Exhibit 197, p. 11.  Those arguments were incorporated into

11   Castillo's original petition.  *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3.  Claim 1(I)(B)

12   relates back to the filing of Castillo's original petition.

13        Claim 1(II)(A) is a claim that Castillo was denied his federal constitutional rights because his

14   trial counsel was ineffective for failure to investigate, identify, and present mitigating evidence.  *See*

15   Second Amended Petition, pp. 35-96.  No claim with the same core of operative facts as this claim

16   was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state

17   habeas action, which briefing was incorporated into his original petition in this action.  *See*

18   Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 1(II)(A) does not relate back to the filing

19   of Castillo's original petition.

20        Claim 1(II)(B) is a claim that Castillo was denied his federal constitutional rights because his

21   trial counsel was ineffective in the penalty phase of his trial for failure to object to improper

22   vouching of third party witnesses.  *See* Second Amended Petition, pp. 96-98.  This claim concerns

23   the testimony of prosecution witnesses Michael Eylar and Paul Ehlers, and trial counsel's alleged

24   ineffective performance in failing to object to the testimony of those witnesses.  *See id*.  No claim

25   with the same core of operative facts as this claim was raised in Castillo's briefing on his direct

26   appeal or in his briefing on the appeal in his first state habeas action, which briefing was

incorporated into his original petition in this action. *See* Respondents' Exhibits 108, 111, 191, 197, and 198. Claim 1(II)(B) does not relate back to the filing of Castillo's original petition.

Claim 1(II)(C) is a claim that Castillo was denied his federal constitutional rights because his trial counsel was ineffective in the penalty phase of his trial for failure to adequately prepare witnesses for cross-examination. *See* Second Amended Petition, pp. 98-104. No claim with the same core of operative facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action, which briefing was incorporated into his original petition in this action. *See* Respondents' Exhibits 108, 111, 191, 197, and 198. Claim 1(II)(C) does not relate back to the filing of Castillo's original petition.

Claim 2

In Claim 2 of his second amended habeas petition, Castillo claims that his federal constitutional rights were violated because the prosecutors used the same acts to support a conviction for first degree murder and to support one or more aggravating factors, and trial and appellate counsel were ineffective for failing to raise this issue. *See* Second Amended Petition, pp. 107-12. No claim with the same core of operative facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action, which briefing was incorporated into his original petition in this action. *See* Respondents' Exhibits 108, 111, 191, 197, and 198. Claim 2 does not relate back to the filing of Castillo's original petition.

Claim 3

In Claim 3, Castillo claims that his federal constitutional rights were violated because the trial judge failed to properly instruct the jury. *See* Second Amended Petition, pp. 113-24. Claim 3 includes six discrete subclaims.

In Claim 3(I)(A), Castillo claims that his federal constitutional rights were violated because, in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding the elements of first degree murder. *See* Second Amended Petition, pp. 113-18. This claim concerns the trial court's use of the so-called "*Kazalyn* instruction" a jury instruction approved in 1992 by the Nevada

16

1   Supreme Court in *Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992), and disapproved by the same

2   court eight years later in *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000).  *See id*.  Castillo argues

3   that this claim relates back to his original petition because in his opening brief on the appeal in his

4   first state habeas action, which he incorporated into his original petition, in a claim that Nevada's

5   capital punishment system operates in an arbitrary and capricious manner, he argued:

6
> As the result of unconstitutional form jury instructions defining reasonable doubt,
> express malice and premeditation and deliberation, first degree murder convictions
7
> occur in the absence of proof beyond a reasonable doubt, in the absence of any
> rational showing of premeditation and deliberation, and as a result of the presumption
8
> of malice aforethought.

9   *See* Opposition to Motion to Dismiss, p. 12; Respondents' Exhibit 191, p. 54.  The court determines,

10  however, that Claim 3(I)(A) does not share a common core of operative fact with that claim made on

11  the appeal in Castillo's first state habeas action, which was incorporated into his original petition in

12  this case.  The claim made before the Nevada Supreme Court was that Nevada's capital punishment

13  system does not adequately narrow the class of murders for which the death penalty may be imposed,

14  and that, as a result, it functions in an arbitrary, capricious and irrational manner.  *See* Respondents'

15  Exhibit 191, pp. 53-57.  The reference made in passing to "form jury instructions defining ...

16  premeditation and deliberation" (*see id*. at 54) was conclusory; it was unsupported by any facts or

17  argument.  The claim made before the Nevada Supreme Court and incorporated by reference into

18  Castillo's original petition did not share a common core of operative fact with Claim 3(I)(A) of

19  Castillo's second amended petition.  Claim 3(I)(A), therefore, does not relate back to the filing of

20  Castillo's original petition.

21      In Claim 3(I)(B), Castillo claims that his federal constitutional rights were violated because,

22  in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding reasonable

23  doubt.  *See* Second Amended Petition, pp. 118-20.  Here again, Castillo argues that this claim relates

24  back to his original petition by virtue of the language quoted above from his opening brief on the

25  appeal in his first state habeas action, which was incorporated into his original petition.  *See*

26  Respondents' Exhibit 191, p. 54.  And, here again, the court determines that Claim 3(I)(B) does not

17

1  share a common core of operative fact with the claim made on the appeal in Castillo's first state

2  habeas action.  The reference made to "form jury instructions defining ... reasonable doubt" (*see id.*)

3  was unsupported by any facts or argument; the claim made before the Nevada Supreme Court did not

4  share a common core of operative fact with Claim 3(I)(B).  Claim 3(I)(B), therefore, does not relate

5  back to the filing of Castillo's original petition.

6  　　　In Claim 3(I)(C), Castillo claims that his federal constitutional rights were violated because,

7  in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding malice

8  aforethought, and appellate counsel was ineffective for failing to raise this issue.  *See* Second

9  Amended Petition, pp. 120-21.  As with Claims 3(I)(A) and 3(I)(B), Claim 3(I)(C) does not share a

10  common core of operative fact with the claim made on the appeal in Castillo's first state habeas

11  action, from which Castillo draws a one-sentence reference to "form jury instructions defining ...

12  express malice" and involving a "presumption of malice aforethought."  *See* Respondents' Exhibit

13  191, p. 54.  Claim 3(I)(C) does not relate back to the filing of Castillo's original petition.

14  　　　In Claim 3(II)(A), Castillo claims that his federal constitutional rights were violated because,

15  in the penalty phase of his trial, the trial court failed to give a presumption of life instruction.  *See*

16  Second Amended Petition, pp. 121-23.  No claim with the same core of operative facts as this claim

17  was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state

18  habeas action, which briefing was incorporated into his original petition in this action.  *See*

19  Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 3(II)(A) does not relate back to the filing

20  of Castillo's original petition.

21  　　　In Claim 3(II)(B), Castillo claims that his federal constitutional rights were violated because,

22  in the penalty phase of his trial, the trial court failed to properly instruct the jury regarding reasonable

23  doubt, and trial counsel was ineffective for failing to raise this issue.  *See* Second Amended Petition,

24  p. 123.  This claim, like Claims 3(I)(A), 3(I)(B), and 3(I)(C), does not share a common core of

25  operative fact with the claim, quoted above, that Castillo made on the appeal in his first state habeas

26

1   action, and that he incorporated into his original petition in this case.  *See* Respondents' Exhibit 191,

2   p. 54.  Claim 3(II)(B) does not relate back to the filing of Castillo's original petition.

3         In Claim 3(II)(C), Castillo claims that his federal constitutional rights were violated because,

4   in the penalty phase of his trial, the trial court failed to instruct the jury that it could consider other

5   bad act evidence only after it found that the aggravating circumstances outweighed the mitigating

6   circumstances beyond a reasonable doubt, and appellate counsel was ineffective for failing to raise

7   this issue.  *See* Second Amended Petition, pp. 123-24.  Castillo made such a claim on the appeal in

8   his first state habeas action.  *See* Respondents' Exhibit 191, pp. 38-41; Respondents' Exhibit 197,

9   pp. 8-11.  The court determines that Claim 3(II)(C) shares a common core of operative fact with that

10  claim, which was incorporated into Castillo's original petition in this case.  Claim 3(II)(C) relates

11  back to the filing of Castillo's original petition.

12  Claim 4

13        In Claim 4, Castillo claims that his federal constitutional rights were violated because the

14  prosecutor's non-statutory aggravating evidence included juvenile offenses and juvenile misconduct,

15  and trial and appellate counsel were ineffective for failing to raise this issue.  *See* Second Amended

16  Petition, pp. 125-40.  No claim with the same core of operative facts as this claim was raised in

17  Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action,

18  which briefing was incorporated into his original petition in this action.  *See* Respondents' Exhibits

19  108, 111, 191, 197, and 198.  Claim 4 does not relate back to the filing of Castillo's original petition.

20  Claim 5

21        In Claim 5, Castillo claims that his federal constitutional rights were violated, in the penalty

22  phase of his trial, as a result of presentation of criminal juvenile records, and trial counsel was

23  ineffective for failing to raise this issue.  *See*  Second Amended Petition, pp. 141-54.  No claim with

24  the same core of operative facts as this claim was raised in Castillo's briefing on his direct appeal or

25  in his briefing on the appeal in his first state habeas action, which briefing was incorporated into his

26

19

1   original petition in this action.  *See* Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 5

2   does not relate back to the filing of Castillo's original petition.

3                                               Claim 6

4          In Claim 6, Castillo claims that his federal constitutional rights were violated because

5   prosecutors introduced evidence in the penalty phase of trial that Castillo held racist "white

6   supremacist" beliefs, and trial and appellate counsel were ineffective for failing to raise this issue.

7   *See* Second Amended Petition, pp. 155-60.  No claim with the same core of operative facts as this

8   claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first

9   state habeas action, which briefing was incorporated into his original petition in this action.  *See*

10  Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 6 does not relate back to the filing of

11  Castillo's original petition.

12                                              Claim 7

13         In Claim 7, Castillo claims that his federal constitutional rights were violated because

14  of prosecutorial misconduct in the penalty phase of the trial.  *See* Second Amended Petition,

15  pp. 161-66.  Claim 7 includes three discrete subclaims.  *See id.*

16         In Claim 7(II)(A), Castillo claims that his federal constitutional rights were violated, in the

17  penalty phase of his trial, because the prosecutor identified mitigating factors that Castillo did not

18  raise or introduce evidence to support, and trial and appellate counsel were ineffective for failing to

19  raise this claim.  *See* Second Amended Petition, pp. 161-63, 165-66.  No claim with the same core of

20  operative facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on

21  the appeal in his first state habeas action, which briefing was incorporated into his original petition in

22  this action.  *See* Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 7(II)(A) does not relate

23  back to the filing of Castillo's original petition.

24         In Claim 7(II)(B), Castillo claims that his federal constitutional rights were violated, in the

25  penalty phase of his trial, because the prosecutor argued that Castillo was an improbable candidate

26  for rehabilitation, and trial and appellate counsel were ineffective for failing to raise this claim.

                                               20

1    *See* Second Amended Petition, pp. 163-66.  No claim with the same core of operative facts as this

2    claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first

3    state habeas action, which briefing was incorporated into his original petition in this action.  *See*

4    Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 7(II)(B) does not relate back to the filing

5    of Castillo's original petition.

6           In Claim 7(II)(C), Castillo claims that his federal constitutional rights were violated, in the

7    penalty phase of his trial, because the prosecutor forced jurors to choose between executing Castillo

8    or an innocent future victim, and trial and appellate counsel were ineffective for failing to raise this

9    claim.  *See* Second Amended Petition, pp. 164-6.  On his direct appeal, Castillo raised a claim

10   regarding this same argument by the prosecutor, and sharing a common core of operative facts with

11   Claim 7(II)(C).  *See* Respondents' Exhibit 108, pp. 36-37; Respondents' Exhibit 111, pp. 9-10.  That

12   claim was incorporated into Castillo's original petition in this case.  *See* Petition for Writ of Habeas

13   Corpus (ECF No. 1), p. 3.  Claim 7(II)(C) relates back to the filing of Castillo's original petition.

14                                   Claim 8

15          In Claim 8 of his second amended petition, Castillo claims that his federal constitutional

16   rights were violated because the prosecutors introduced unduly prejudicial victim impact testimony.

17   *See* Second Amended Petition, pp. 167-73.  Claim 8 includes two discrete claims.  *See id.*

18          In Claim 8(II)(A), Castillo claims that the prosecutors introduced irrelevant and prejudicial

19   victim impact evidence during the guilt phase of the trial.  *See* Second Amended Petition, pp. 167-

20   69.  This claim concerns the testimony of Jean Marie Hosking, the victim's daughter, during the guilt

21   phase of the trial.  *See id.*  On his direct appeal, Castillo asserted a claim that it was error for the trial

22   court to admit, in the guilt phase of the trial, through Hosking's testimony, a photograph of the

23   victim and her granddaughter.  *See* Respondents' Exhibit 108, pp. 28-31; Respondents' Exhibit 111,

24   pp. 4-7.  Castillo argued on his direct appeal that the photograph constituted unduly prejudicial

25   victim impact testimony.  *See* Respondents' Exhibit 108, p. 29.  That claim, incorporated into his

26

1    original petition in this case, shares a common core of operative facts with Claim 8(II)(A).  Claim

2    8(II)(A) in Castillo's second amended petition relates back to the filing of his original petition.

3              In Claim 8(IV), Castillo claims that the prosecutors introduced unduly prejudicial victim

4    impact testimony during the penalty phase of the trial.  *See* Second Amended Petition, pp. 169-72.

5    This claim concerns penalty-phase testimony of Jean Marie Hosking, as well as penalty-phase

6    testimony of Lisa Keimach and Ronda LaLicata, the victim's granddaughters.  *See id*.  On his direct

7    appeal, Castillo asserted a claim that it was error for the trial court to admit in the penalty phase of

8    the trial, to the extent it did, the victim impact testimony of Hosking, Keimach, and LaLicata.  *See*

9    Respondents' Exhibit 108, pp. 41-45; Respondents' Exhibit 111, p. 12.  That claim, made on

10   Castillo's direct appeal, and incorporated into his original petition in this case, shares a common core

11   of operative facts with Claim 8(IV).  Claim 8(IV) in Castillo's second amended petition relates back

12   to the filing of his original petition.

13                                        Claim 9

14             In Claim 9, Castillo claims that his federal constitutional rights were violated because the

15   trial judge allowed the prosecutor to elicit testimony regarding Castillo's other criminal acts.

16   *See* Second Amended Petition, pp. 174-76.  This claim concerns guilt-phase testimony of

17   prosecution witness Harry Kumma, Jr.  *See id*.  On his direct appeal, Castillo asserted a claim that

18   shared a common core of operative fact with Claim 9.  *See* Respondents' Exhibit 108, pp. 32-35;

19   Respondents' Exhibit 111, pp. 7-8.  That claim was incorporated into Castillo's original petition in

20   this case.  *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3.  As respondents appear to

21   concede (*see* Reply in Support of Motion to Dismiss (ECF No. 172), p. 15), Claim 9 relates back to

22   the filing of Castillo's original petition.

23                                        Claim 10

24             In Claim 10, Castillo claims that his federal constitutional rights were violated because of the

25   trial court's failure to record critical proceedings, and trial counsel was ineffective for failing to raise

26   this issue.  *See* Second Amended Petition, pp. 177-78.  No claim with the same core of operative

facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action, which briefing was incorporated into his original petition in this action.  *See* Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 10 does not relate back to the filing of Castillo's original petition.

Claim 11

In Claim 11, Castillo claims that his federal constitutional rights were violated because Nevada's deadly weapon enhancement statute was vague and over-broad, and trial and appellate counsel were ineffective for failing to raise this issue.  *See* Second Amended Petition, pp. 179-81.  Respondents concede that Claim 11 relates back to the filing of Castillo's original petition.  *See* Motion to Dismiss, pp. 13-15.  On the appeal in his first state habeas action, Castillo asserted a claim that shared a common core of operative fact with Claim 9.  *See* Respondents' Exhibit 191, pp. 31-38.  That claim was incorporated into Castillo's original petition.  *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3.  Claim 11 relates back to the filing of Castillo's original petition.

Claim 12

In Claim 12, Castillo claims that his federal constitutional rights were violated because his sentence was enhanced based on Nevada's deadly weapon enhancement statute when neither the jury verdict nor the indictment supported such enhancement, and trial and appellate counsel were ineffective for failing to raise this issue.  *See* Second Amended Petition, pp. 182-84.  No claim with the same core of operative facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action, which briefing was incorporated into his original petition in this action.  *See* Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 12 does not relate back to the filing of Castillo's original petition.

Claim 13

In Claim 13, Castillo claims that his federal constitutional rights were violated because Nevada's lethal injection scheme constitutes cruel and unusual punishment.  *See* Second Amended Petition, pp. 185-207.  This claim shares a common core of operative fact with a claim made by

23

1    Castillo on the appeal in his first state habeas action.  *See* Respondents' Exhibit 191, pp. 49-52.  That

2    claim was incorporated into Castillo's original petition in this case.  *See* Petition for Writ of Habeas

3    Corpus (ECF No. 1), p. 3.   Claim 13 relates back to the filing of Castillo's original petition.

Claim 14

5         In Claim 14, Castillo claims that his death sentence is in violation of his federal constitutional

6    rights due to the restrictive conditions on Nevada's death row and delay caused by ineffective

7    assistance of his trial and appellate counsel, and appellate counsel was ineffective for failing to raise

8    this issue.  *See* Second Amended Petition, pp. 208-09.  No claim with the same core of operative

9    facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on the

10   appeal in his first state habeas action, which briefing was incorporated into his original petition in

11   this action.  *See* Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 14 does not relate back

12   to the filing of Castillo's original petition.

Claim 15

14        In Claim 15, Castillo claims that his federal constitutional rights were violated because his

15   trial, sentencing, and review on direct appeal were conducted before state judicial officers whose

16   tenure in office was not dependent on good behavior but was rather dependent on popular election,

17   and who failed to conduct fair and adequate appellate review.  *See* Second Amended Petition,

18   pp. 210-15.  The core of operative facts upon which this claim is premised involve the popular

19   election of judges in Nevada.  *See id*.  No claim with the same core of operative facts as this claim

20   was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state

21   habeas action, which briefing was incorporated into his original petition in this action.  *See*

22   Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 15 does not relate back to the filing of

23   Castillo's original petition.

Claim 16

25        In Claim 16, Castillo claims that his federal constitutional rights were violated because of the

26   arbitrariness of Nevada's capital sentencing scheme.  *See* Second Amended Petition, p. 216.  This

claim shares a common core of operative fact with a claim made by Castillo on the appeal in his first state habeas action.  *See* Respondents' Exhibit 191, pp. 53-57.  That claim was incorporated into Castillo's original petition in this case.  *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3. Claim 16 relates back to the filing of Castillo's original petition.

<u>Claim 17</u>

In Claim 17, Castillo claims that his federal constitutional rights were violated because executing a mental ill, cognitively distressed individual constitutes cruel and unusual punishment. *See* Second Amended Petition, pp. 217-24.  No claim with the same core of operative facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action, which briefing was incorporated into his original petition in this action.  *See* Respondents' Exhibits 108, 111, 191, 197, and 198.  Claim 17 does not relate back to the filing of Castillo's original petition.

<u>Claim 18</u>

In Claim 18, Castillo claims that his federal constitutional rights were violated because the trial judge, in his instructions to the jury, and the prosecutor, during arguments, limited the jury's consideration of Castillo's theory of mitigating factors.  *See* Second Amended Petition, pp. 225-27. This claim shares a common core of operative fact with a claim made by Castillo on his direct appeal.  *See* Respondents' Exhibit 108, pp. 49-50; Respondents' Exhibit 111, p. 14.  That claim was incorporated into Castillo's original petition in this case.  *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3.   Claim 18 relates back to the filing of Castillo's original petition.

<u>Claim 19</u>

In Claim 19 of his second amended petition, Castillo claims that his federal constitutional rights were violated because of the cumulative errors in his trial, appeal and state post-conviction proceedings.  *See* Second Amended Petition, p. 228.  Castillo's cumulative error claim incorporates all his other claims; it relates back to his original petition, and is timely, to the extent that his other claims relate back and are timely.

<u>Summary of Rulings Regarding Relation Back of Claims</u>

The court determines, then, that the following claims in Castillo's second amended petition for writ of habeas corpus relate back to the filing of his original petition, and were, therefore, timely filed:  Claims 1(I)(B), 3(II)(C), 7(II)(C), 8(II)(A), 8(IV), 9, 11, 13, 16, 18 and 19.

On the other hand, the court determines that the following claims in Castillo's second amended petition for writ of habeas corpus do not relate back to the filing of his original petition, and were, therefore, filed after the limitations period expired:  Claims 1(I)(A), 1(II)(A), 1(II)(B), 1(II)(C), 2, 3(I)(A), 3(I)(B), 3(I)(C), 3(II)(A), 3(II)(B), 4, 5, 6, 7(II)(A), 7(II)(B), 10, 12, 14, 15 and 17.

<u>Castillo's Actual Innocence Arguments Regarding Claims 2 and 3(I)(A)</u>

Claim 2, again, is Castillo's claim that his federal constitutional rights were violated because the prosecutors used the same acts to support a conviction for first degree murder and to support one or more aggravating factors, and trial and appellate counsel were ineffective for failing to raise this issue.  And, Claim 3(I)(A) is his claim that his federal constitutional rights were violated because, in the guilt phase of his trial, the trial court did not properly instruct the jury regarding the elements of first degree murder.  Castillo argues that, with respect to these claims, he can overcome the statute of limitations bar because "these claims render Castillo actually innocent of first-degree murder and the death penalty."  *See* Opposition to Motion to Dismiss, pp. 20-22.

In *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), the Supreme Court held that a showing of actual innocence may function as an equitable exception to the statute of limitations, allowing consideration of an otherwise time-barred claim.  However, the Supreme Court cautioned that "tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin*, 133 S.Ct. at 1928 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  To avail himself of this equitable exception to the statute of limitations, the petitioner must present "evidence of innocence so strong

26

1  that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that

2  the trial was free of nonharmless constitutional error." *Id.* at 1936 (quoting *Schlup*, 513 U.S. at 316).

3       The court determines that the question whether Castillo can make a showing of actual

4  innocence sufficient to overcome the statute of limitations bar of Claims 2 and 3(I)(A), within the

5  meaning of the Supreme Court's holding in *McQuiggin*, will be better addressed in conjunction with

6  the merits of Castillo's remaining claims, after respondents file an answer and Castillo a reply.

7  Therefore, the court will deny respondents' motion to dismiss, based on the statute of limitations,

8  with respect to Claims 2 and 3(I)(A), without prejudice to respondents raising the statute of

9  limitations as a defense to those claims in their answer, and without prejudice to Castillo asserting

10 his claim of actual innocence to overcome the statute of limitations bar of those claims, in his reply.

11      <u>Statutory Tolling - 28 U.S.C. § 2244(d)(1)(D)</u>

12      With respect to Claim 1(II)(A) -- Castillo's claim that he was denied his federal constitutional

13 rights because his trial counsel was ineffective for failure to investigate, identify, and present

14 mitigating evidence (*see* Second Amended Petition, pp. 35-96) -- Castillo argues that, under

15 28 U.S.C. § 2244(d)(1)(D), he should receive the benefit of a later date of commencement of the

16 running of the limitations period, because of the timing of his discovery of the factual predicate of

17 the claim.  *See* Opposition to Motion to Dismiss, pp. 10-11.

18      The Ninth Circuit Court of Appeals described the operation of 28 U.S.C. § 2244(d)(1)(D) in

19 *Ford v. Gonzalez*, 683 F.3d 1230 (9th Cir. 2012):

20      The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim "could have been discovered through the exercise of due
21 diligence," not when it actually was discovered.  28 U.S.C. § 2244(d)(1)(D) (emphasis added); *accord Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004).  "Due
22 diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances."  *Schlueter*, 384 F.3d at 74 (quoting *Moore
23 v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004); *see also Quezada v. Scribner*, 611 F.3d 1165, 1168 (9th Cir. 2010) (using reasonable diligence standard in evaluating
24 commencement of statute of limitations under § 2244(d)(1)(D)); *Starns v. Andrews*, 524 F.3d 612, 619 (5th Cir. 2008); *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)
25 (noting that § 2244(d)(1)(D) requires only due, or reasonable, diligence).

26      "Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only 'if vital facts could not have been known'" by the date the

1    appellate process ended.  *Schlueter*, 384 F.3d at 74 (quoting *Owens v. Boyd*, 235 F.3d
     356, 359 (7th Cir.2000)).  The "due diligence" clock starts ticking when a person
2    knows or through diligence could discover the vital facts, regardless of when their
     legal significance is actually discovered.  *See* [*Hasan v. Galaza*, 254 F.3d 1150, 1154
3    n.3 (9th Cir. 2001)]; *see also Redd v. McGrath*, 343 F.3d 1077, 1082 (9th Cir. 2003).

4            Although section 2244(d)(1)(D)'s due diligence requirement is an objective
     standard, a court also considers the petitioner's particular circumstances.  *See Wood v.*
5    *Spencer*, 487 F.3d 1, 5 (1st Cir. 2007) (holding that due diligence under
     § 2244(d)(1)(D) is an objective test); *Schlueter*, 384 F.3d at 75 (considering
6    petitioner's physical confinement and familial assistance in determining due
     diligence); *Moore*, 368 F.3d at 940 (taking into account that prisoners are limited by
7    their physical confinement in determining due diligence); *Easterwood v. Champion*,
     213 F.3d 1321, 1323 (10th Cir. 2000) (holding that a case is "discoverable" by "due
8    diligence" on the date it becomes accessible in the prison law library, rather than the
     date of publication); *see also Starns*, 524 F.3d at 619 (holding that a petitioner did not
9    fail to act with due diligence given the state's misleading suggestion).  Just as the
     petitioner's particular circumstances may include impediments to discovering the
10   factual predicate of a claim, they may also include any unique resources at the
     petitioner's disposal to discover his or her claim. *See, e.g., Schlueter*, 384 F.3d at 75
11   (considering that a petitioner's parents actively assisted him in evaluating his
     diligence).
12

13   *Ford*, 683 F.3d at 1235-36 (footnote omitted).  For purposes of § 2244(d)(1)(D), the "factual

14   predicate" of a claim is the petitioner's knowledge of the facts supporting the claim, not evidentiary

15   support for the claim.  *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) ("Flanagan is

16   confusing his knowledge of the factual predicate of his claim with the time permitted for gathering

17   evidence in support of that claim.").

18           Applying these standards, the court concludes that Castillo does not make the sort of showing

19   necessary for application of § 2244(d)(1)(D).  His argument focuses on the date on which he claims

20   to have obtained evidentiary support for his claim; he makes no showing with respect to when he

21   actually obtained knowledge of the factual predicate of the claim, or, more precisely, when he could

22   have discovered the factual predicate of the claim through the exercise of due diligence.

23           The court determines that, with respect to Claim 1(II)(A), Castillo is not entitled to a later

24   commencement date for the limitations period under § 2244(d)(1)(D).

25

26

Equitable Tolling - Scheduling Orders

As the court understands Castillo's first argument for equitable tolling, it is that he should receive the benefit of equitable tolling because he was misled by the court's scheduling orders to believe that new claims asserted in his amended habeas petition would automatically be considered to be in compliance with the statute of limitations, so long as the amended petition was filed within the time allowed by those scheduling orders.  *See* Opposition to Motion to Dismiss, pp. 22-50.

The AEDPA limitations period is subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013) ("[T]he requirement that extraordinary circumstances stood in [the petitioner's] way suggests that an external force must cause the untimeliness, rather than ... merely oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling." (internal quotations and citations omitted); *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) ("The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness ... and that the extraordinary circumstances made it impossible to file a petition on time." (internal quotations, citations, and alteration omitted)).   "The high threshold of extraordinary circumstances is necessary 'lest the exceptions swallow the rule.'" *Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011), quoting *Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006).   It is the habeas petitioner's burden to establish that equitable tolling is warranted.  *Pace*, 544 U.S. at 418; *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").  The court finds that Castillo fails to make either necessary showing for equitable tolling -- that an extraordinary circumstance stood in the way of the filing of his amended petition, or that he pursued his rights diligently.

1    Instructions from a court do not serve as a basis for equitable tolling unless the court

2    "affirmatively misled" the petitioner.  *Ford v. Pliler*, 590 F.3d 782, 786-87 (9th Cir. 2009).  There is

3    no showing by Castillo that he was affirmatively misled by the court.  The court's orders during the

4    time in question granted leave for Castillo to conduct discovery, set time limits for Castillo to do

5    investigation and conduct discovery, and set time limits for Castillo to file an amended petition if he

6    deemed one necessary; those orders did not make any statement about, or have any bearing on, the

7    operation of the statute of limitations.  Castillo has not made any factual allegation, and he has not

8    proffered any evidence, suggesting otherwise.

9    Furthermore, the United States Supreme Court decided *Mayle* on June 23, 2005, almost four

10   months before the expiration of the limitations period in this case.  In *Mayle*, the Supreme Court held

11   that an amended habeas petition does not relate back when it asserts a new ground for relief

12   supported by facts that differ in both time and type from those set forth in the original pleading.

13   *Mayle*, 545 U.S. at 650.  If Castillo and his counsel were under any misconception about whether

14   new claims in an amended petition would relate back to Castillo's original petition, *Mayle* should

15   have cleared that up.  However, despite the plain import of the Supreme Court's June 23, 2005 ruling

16   in *Mayle*, Castillo did not file his first amended habeas petition before the expiration of the

17   limitations period on October 17, 2005; rather, he waited more than three more years, until

18   December 15, 2008, before doing so.  That period of time, after the *Mayle* decision and after there

19   could have been no confusion about the question of the relation back of new claims in an amended

20   habeas petition, in itself, is far in excess of the one-year limitations period applicable under

21   28 U.S.C. § 2244(d).

22   To the extent that Castillo's argues that equitable tolling must be granted because of his

23   counsel's failure to recognize that their delay from August 2004 to December 2008, in filing

24   Castillo's first amended petition, would run afoul of the statute of limitations (*see* Opposition to

25   Motion to Dismiss, pp. 59-60), that argument is without merit.  A petitioner is not entitled to

26   equitable tolling when his untimeliness is attributable to his own "oversight, miscalculation or

negligence." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal quotations, citation, and alteration omitted).  And, a petitioner is not entitled to equitable tolling where the cause of his late filing is incorrect advice from counsel.  *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) ("We conclude that the miscalculation of the limitations period by ... counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling.").  There is no suggestion in this case of the sort of "egregious misconduct" on the part of counsel, with regard to the running of the statute of limitations, that could warrant equitable tolling.  *See Spitsyn v. Moore*, 345 F.3d 796, 800-02 (9th Cir. 2003) (equitable tolling warranted where attorney retained to prepare and file habeas petition, failed to do so, and disregarded requests to return files until well after the date the petition was due).  Appointment of separate counsel is unwarranted.  *See* Opposition to Motion to Dismiss, pp. 59-60.

The court also rejects Castillo's argument that the respondents' conduct, with respect to the scheduling of the litigation of this action, somehow provides grounds for equitable tolling.  *See id.* at 48-50.  There is no showing that respondents did anything to mislead Castillo, or otherwise prevent Castillo from filing a timely amended petition.

Taking the specific factual allegations in his opposition to the motion to dismiss as true, Castillo has not shown that any extraordinary circumstance prevented timely filing of his amended habeas petition, and he has not shown that he has pursued his rights diligently.  *See Holland*, 560 U.S. at 649.  Equitable tolling is not warranted.

In his motion for evidentiary hearing, Castillo requests an evidentiary hearing to establish that he is entitled to equitable tolling.  Motion for an Evidentiary Hearing (ECF No. 156), pp. 9-10. Because Castillo seeks an evidentiary hearing on a procedural issue, the restrictions imposed by 28 U.S.C. § 2254(e)(2) do not apply to this request.  Even so, to show he is entitled to an evidentiary hearing, Castillo must allege facts which, if true, would entitle him to relief.  *See*, *e.g.*, *Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006).  "If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

1   *West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010) (internal quotations omitted).  In considering

2   Castillo's argument for equitable tolling, the court accepts, at face value, his specific factual

3   allegations and the evidence he has proffered, and determines that equitable tolling is unwarranted.

4   The court declines to grant Castillo an evidentiary hearing on the issue of equitable tolling.

5                    Equitable Tolling - Castillo's Voluntary Dismissal

6          Castillo also argues that equitable tolling is warranted from when he voluntarily dismissed

7   this action until he changed his mind and asked the court to vacate the judgment and reopen it.  *See*

8   Opposition to Motion to Dismiss, pp. 50-56.

9          On July 30, 2007, Castillo filed, *pro se*, a notice requesting that this action be dismissed

10  (ECF No. 51) .  After a hearing on August 13, 2007 (ECF No. 55), the court treated Castillo's notice

11  as a request for voluntary dismissal, and granted the request.  The court dismissed the case, without

12  prejudice, and judgment was entered on September 6, 2007 (ECF Nos. 57, 58).  Then, about nine

13  months later, on May 7, 2008, Castillo moved to reinstate his federal habeas petition (ECF No. 59).

14  The court granted Castillo's motion on May 16, 2008, and vacated the September 6, 2007 judgment,

15  and litigation of this action resumed (ECF No. 62).

16         Castillo's argument for equitable tolling during the time that he abandoned this action is

17  completely without merit.  The dismissal of this action, and it's reinstatement some nine months

18  later, was Castillo's doing.  This was not an extraordinary circumstance that stood in Castillo's way

19  and prevented timely filing of his first amended petition.  And, with respect to the litigation of this

20  action, and the filing of his first amended petition, Castillo cannot be said to have acted with due

21  diligence, when he asked that the case be dismissed and then later asked that it be reinstated.

22  Equitable tolling on this ground is plainly unwarranted.

23                    Right to Counsel

24         Castillo argues that application of the statute of limitations to bar his untimely claims would

25  violate his right to counsel under 18 U.S.C. § 3599, "because it would cause his capital case to have

26  been decided, and ultimately dismissed, based on an initial petition he filed without the assistance of

federal counsel." *See* Opposition to Motion to Dismiss, p. 56. Castillo cites no authority supporting his contention that 18 U.S.C. § 3599 provides a capital habeas petitioner a right to file new claims, with the assistance of counsel, after the expiration of the limitations period. There is no showing that Castillo's statutory right to counsel has been violated in this case.

<u>Summary of Rulings Regarding the Statute of Limitations</u>

The court concludes that the following claims in Castillo's second amended petition are subject to dismissal as barred by the statute of limitations: Claims 1(I)(A), 1(II)(A), 1(II)(B), 1(II)(C), 3(I)(B), 3(I)(C), 3(II)(A), 3(II)(B), 4, 5, 6, 7(II)(A), 7(II)(B), 10, 12, 14, 15 and 17.

The court finds that Claims 2 and 3(I)(A) were untimely filed, under the statute of limitations, but, as Castillo asserts that he can overcome the statute of limitations bar of those claims by a showing of actual innocence, the court will address the question whether those two claims are subject to dismissal on statute of limitations grounds after the parties fully brief the merits of those two claims, as well as all Castillo's remaining claims.

The court concludes that the following claims were timely filed, and are not subject to dismissal on statute of limitations grounds: Claims 1(I)(B), 3(II)(C), 7(II)(C), 8(II)(A), 8(IV), 9, 11, 13, 16, 18 and 19.

<u>Exhaustion</u>

A federal court may not grant habeas corpus relief on a claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is intended to allow state courts the initial opportunity to correct constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002). To exhaust a claim, a petitioner must fairly present the claim to the highest state court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). A claim is fairly presented to the state's highest court if, before that court, the petitioner describes the operative facts

1    and legal theory upon which the claim is based.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982)

2    (per curiam); *Picard*, 404 U.S. at 275; *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982).

3    Respondents argue that Claims 3(II)(C), 13, 15, and 19 of Castillo's second amended habeas

4    petition are unexhausted in state court.  *See* Motion to Dismiss, pp. 20-22; Reply in Support of

5    Motion to Dismiss (ECF No. 172), pp. 33-37.

6    Claim 3(II)(C)

7    Claim 3(II)(C) is Castillo's claim that his federal constitutional rights were violated, in the

8    penalty phase of his trial, because the trial court failed to instruct the jury that it could consider other

9    bad act evidence only after it found that the aggravating circumstances outweighed the mitigating

10   circumstances beyond a reasonable doubt, and appellate counsel was ineffective for failing to raise

11   this issue.  *See* Second Amended Petition, pp. 123-24.  Castillo argues that he exhausted Claim

12   3(II)(C) on the appeal in his first state habeas action.  *See* Opposition to Motion to Dismiss, pp. 2-3.

13   On that appeal, Castillo argued that the trial court did not provide proper jury instructions in the

14   penalty phase of his trial regarding prior bad act evidence, and that his trial and appellate counsel

15   were ineffective for not raising this issue.  *See* Respondents' Exhibit 191, pp. 38-41.  Castillo's

16   argument before the Nevada Supreme Court relied heavily upon that court's decision in *Evans v.*

17   *State*, 117 Nev. 609, 28 P.3d 498 (2001), which, in turn, addressed the issue in terms of federal

18   constitutional principles.  *See* Respondents' Exhibit 191, pp. 38-41; *Evans*, 117 Nev. at 637, 28 P.3d

19   at 517.  The court finds that Claim 3(II)(C) was exhausted in state court in Castillo's first state

20   habeas action.

21   Claim 13

22   In Claim 13, Castillo claims that his federal constitutional rights were violated because

23   Nevada's lethal injection scheme constitutes cruel and unusual punishment.  *See* Second Amended

24   Petition, pp. 185-207.  Castillo raised such a claim on the appeal in his first state habeas action.  *See*

25   Respondents' Exhibit 191, pp. 3-4.  Claim 13 was exhausted in state court in Castillo's first state

26   habeas action.

1                   Claim 15

2          In Claim 15, Castillo claims that his federal constitutional rights were violated because his

3   trial, sentencing, and review on direct appeal were conducted before state judicial officers whose

4   tenure in office was not dependent on good behavior but was rather dependent on popular election,

5   and who failed to conduct fair and adequate appellate review.  *See* Second Amended Petition, pp.

6   210-15.  Castillo asserted such a claim in his second state habeas action.  *See* Petitioner's Exhibit

7   157, pp. 170-71.  Claim 15 was exhausted in state court in Castillo's second state habeas action.

8                   Claim 19

9          In Claim 19, Castillo claims that his federal constitutional rights were violated because of the

10  cumulative errors in his trial, appeal and state post-conviction proceedings.  *See* Second Amended

11  Petition, p. 228.  Claim 19, Castillo's cumulative error claim, incorporates all his other claims; it is

12  exhausted, to the extent that his other claims are exhausted.

13          Procedural Default

14               Legal Standards

15          In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply

16  with the state's procedural requirements in presenting his claims is barred from obtaining a writ of

17  habeas corpus in federal court by the adequate and independent state ground doctrine.  *Coleman v.*

18  *Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to

19  exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural

20  requirements for presenting his federal claims has deprived the state courts of an opportunity to

21  address those claims in the first instance.").  Where such a procedural default constitutes an adequate

22  and independent state ground for denial of habeas corpus, the default may be excused only if "a

23  constitutional violation has probably resulted in the conviction of one who is actually innocent," or if

24  the prisoner demonstrates cause for the default and prejudice resulting from it.  *Murray v. Carrier*,

25  477 U.S. 478, 496 (1986).

26

35

1        To demonstrate cause for a procedural default, the petitioner must "show that some objective

2    factor external to the defense impeded" his efforts to comply with the state procedural rule.  *Murray*,

3    477 U.S. at 488.  For cause to exist, the external impediment must have prevented the petitioner from

4    raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  With respect to the prejudice

5    prong, the petitioner bears "the burden of showing not merely that the errors [complained of]

6    constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

7    infecting his entire [proceeding] with errors of constitutional dimension."  *White v. Lewis*, 874 F.2d

8    599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

9        In their motion to dismiss, respondents assert that Claims 1(I)(A), 1(II)(A), 1(II)(B), 1(II)(C),

10   2, 3(I)(A), 3(I)(B), 3(I)(C), 3(II)(A), 3(II)(B), 3(II)(C), 4, 5, 6, 7(II)A), 7(II)(B), 8(II)(A), 8(IV), 10,

11   11, 12, 13, 14, 15, 16, 17, 18 and 19 -- *i.e.*, all Castillo's claims except Claims 1(I)(B), 7(II)(C) and 9

12   -- are barred by the procedural default doctrine, and should be dismissed on that ground.  *See* Motion

13   to Dismiss, pp. 23-25; Reply in Support of Motion to Dismiss, pp. 37-38.

14                        Castillo's Procedural Defaults

15       On Castillo's appeal of the denial of his first state habeas petition, the Nevada Supreme Court

16   ruled, as follows, that several of Castillo's claims were procedurally barred, under NRS 34.810,[3]

17   because they could have been, but were not, raised on his direct appeal:

18           A court must dismiss a habeas petition if it presents claims that either were or
         could have been presented in an earlier proceeding, unless the court finds both good
19       cause for failing to present the claims earlier or for raising them again and actual
         prejudice to the petitioner.  [Footnote: NRS 34.810.]
20
                                  *   *   *
21
             In his remaining claims, Castillo raises alleged trial or other freestanding
22       errors.  He fails to articulate any good cause for failing to raise the claims before, and
         they are consequently procedurally barred.  Although he asserts that his conviction is
23       unconstitutional because of cumulative error, including "the systematic deprivation of
         petitioner's right to the effective assistance of trial and appellate counsel," this court
24       does not accept

25

26   _____

             [3]  Nevada Revised Statutes § 34.810.

                                     36

1    conclusory, catchall attempts to assert ineffective assistance of
2    counsel. If first-time applicants for post-conviction habeas relief fail
     to argue specifically that their trial or appellate counsel were
3    ineffective in regard to an issue or to show good cause for failing to
     raise the issue before, that issue will not be considered, pursuant to
4    NRS 34.810. [Footnote: *Evans*, 117 Nev. at 647, 28 P.3d at 523.]

5    The following claims are therefore procedurally barred: the tire iron or
     crowbar used in the murder was not a deadly weapon; NRS 193.165(5), which defines
6    "deadly weapon," is unconstitutionally vague and ambiguous; the death penalty is
     cruel and unusual punishment under the Eighth Amendment of the United States
7    Constitution and violates international law; execution by lethal injection is cruel and
     unusual punishment and violates international law; Castillo's conviction and sentence
8    are invalid under the International Covenant on Civil and Political Rights; and
     Nevada's capital punishment system is unconstitutional because it operates in an
9    arbitrary and capricious manner.

10   Order of Affirmance, Respondents' Exhibit 198, pp. 4, 9-10.

11          In his second state habeas petition, filed September 18, 2009, Castillo asserted all the claims

12   that are set forth in his second amended petition in this federal action. *See* Petition for Writ of

13   Habeas Corpus (Post-Conviction), Respondents' Exhibit 222. The state district court dismissed that

14   petition on procedural grounds. *See* Findings of Fact, Conclusions of Law and Order, Respondents'

15   Exhibit 247. The state district court summarized its rulings as follows:

16          The instant post-conviction petition is filed more than ten (10) years after
            issuance of Remittitur from direct appeal in violation of the one-year time bar of NRS
17          34.726. Additionally, the current petition is Castillo's second attempt at state post-
            conviction relief and is barred as a skuccessive petition per NRS 34.810. The state
18          also affirmatively pleads laches and invokes the five-year time bar of NRS 34.800.
            This Court finds the allegations of good cause and prejudice are insufficient to
19          overcome each of these bars and orders the petition dismissed.

20   *Id.* at 2. Castillo appealed, and the Nevada Supreme Court affirmed on July 18, 2013. *See* Order of

21   Affirmance, Respondents' Exhibit 268. The Nevada Supreme Court stated:

22          Because Castillo filed his petition ten years after the remittitur issued in his
            direct appeal, *Castillo v. State*, 114 Nev. 271, 956 P.2d 103 (1998), the petition was
23          untimely under NRS 34.726(1). The petition was also successive because he
            previously filed a post-conviction petition for a writ of habeas corpus, and it
24          constituted an abuse of the writ as he raised claims new and different from those
            raised in his previous petition. [Footnote: *Castillo v. State*, Docket No. 40982 (Order
25          of Affirmance, February 5, 2004).] *See* NRS 34.810(1)(b)(2); NRS 34.810(2). The
            petition was therefore procedurally barred absent a demonstration of good cause and
26          prejudice. NRS 34.726(1); NRS 34.810(3).

37

*Id.* at 2.  The Nevada Supreme Court went on to rule that Castillo did not show cause and prejudice regarding his default, to reject Castillo's argument that he should be excused from the state procedural default rules because the court had arbitrarily and inconsistently applied them, to reject Castillo's argument that the procedural default was the fault of his counsel, and not his own fault, and to reject Castillo's argument that he could overcome the procedural default by showing that its application amounts to a fundamental miscarriage of justice because he is actually innocent of the death penalty.  *Id.* at 3-8.

Adequacy of the State Procedural Rules

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (state procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied" (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy.  Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id.* at 586.  The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.*  If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*;  *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

In this case, the respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court's application of NRS 34.726 and 34.810 constituted independent and

1  adequate state procedural grounds for denying relief.  *See* Motion to Dismiss, pp. 23-25; *see also*

2  *Bennett*, 322 F.3d at 586.

3          In response, Castillo argues that both NRS 34.726 and 34.810 were inadequate, at the time

4  when the defaults occurred, to support application of the procedural default doctrine.  *See* Opposition

5  to Motion to Dismiss, pp. 79-96.  In doing so, Castillo has met his burden of placing the defense at

6  issue.  *See Bennett*, 322 F.3d at 586.

7          With respect to NRS 34.810, the Nevada statute regarding successive habeas petitions,

8  respondents do not meet their ultimate burden of proving the rule's adequacy; respondents have not

9  shown that at the time of the procedural defaults, the rule was regularly and consistently applied.

10         Regarding the procedural bar under NRS 34.810 imposed in Castillo's first state habeas

11 action, concerning claims he could have raised on his direct appeal, respondents concede that NRS

12 34.810 was inadequate to support application of the procedural default doctrine:

13              As to the remaining allegations regarding the first state habeas appeal,
               Respondents acknowledge the Ninth Circuit's precedent that, in a capital action, Nev.
14             Rev. Stat. 34.810 is not an adequate procedural bar for the time period in question.
               *Vang v. Nevada*, 329 F.3d 1069 (9th Cir. 2003).
15

16 Reply in Support of Motion to Dismiss, p. 46.  The Ninth Circuit Court of Appeals has ruled

17 NRS 34.810 to be inadequate to support the procedural default defense in capital cases, at least

18 before 2002.  *See Valerio v. Crawford*, 306 F.3d 742, 777-78 (9th Cir. 2002); *Vang*, 329 F.3d at

19 1073-75.

20         Regarding the procedural bar under NRS 34.810 imposed in Castillo's second state habeas

21 action, respondents have not met their ultimate burden of showing that NRS 34.810 was regularly

22 and consistently applied between April 2, 1999, and June 11, 2003, when Castillo litigated his first

23 state habeas corpus action in the state district court and failed to raise claims that he later raised in

24 his second state habeas action.  *See* Reply in Support of Motion to Dismiss, pp. 45-50.  The court,

25 therefore, determines that, in this case, NRS 34.810 is inadequate to support the procedural default

26 defense asserted by respondents.

1       Turning to NRS 34.726 -- the state statute of limitations -- the Ninth Circuit Court of Appeals

2   has rejected the argument that the Nevada Supreme Court has inconsistently applied that statute, and

3   has held it to be adequate to support application of the procedural default defense.  *See Loveland v.*

4   *Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000) (regarding NRS 34.726, as of 1993); *Moran v.*

5   *McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (regarding NRS 34.726, as of 1996).  The Ninth

6   Circuit Court of Appeals has never ruled NRS 34.726 to be inadequate to support application of the

7   procedural default defense.

8       Nevertheless, Castillo argues that NRS 34.726 is inadequate to bar federal review in his case.

9   *See* Opposition to Motion to Dismiss, pp. 82-96.  The court, however, finds that Castillo does not

10  show NRS 34.726 to be other than clear, consistently applied and well-established.  The Nevada

11  courts' exercise of discretion in isolated cases does not necessarily render procedural rules

12  inadequate to support the procedural default defense in federal court.  *See Walker v. Martin*, 562 U.S.

13  307, 319-21 (2011) (rule not automatically inadequate "upon a showing of seeming inconsistencies"

14  and state court must be allowed discretion "to avoid the harsh results that sometimes attend

15  consistent application of an unyielding rule"); *see also Beard v. Kindler*, 558 U.S. 53, 60-61 (2009)

16  ("[A] discretionary rule can be 'firmly established' and 'regularly followed' -- even if the appropriate

17  exercise of discretion may permit consideration of a federal claim in some cases but not others.").

18  This court determines that Castillo has not met his burden under *Bennett*, to assert specific factual

19  allegations demonstrating the inadequacy of the statute of limitations in NRS 34.726.  This court

20  rules NRS 34.726 to be adequate to support the procedural default defense asserted by respondents.

21      Castillo requests an evidentiary hearing with regard to the question of the adequacy of the

22  state procedural rules under which his claims were barred.  *See* Motion for Evidentiary Hearing,

23  p. 10.  However, the court's ruling with respect to the adequacy of NRS 34.726 does not depend on

24  the resolution of any question of fact.  Castillo has not shown any need for an evidentiary hearing.

25  The court declines to grant Castillo an evidentiary hearing on this issue.

26

40

1          <u>*Martinez* - Castillo's Claims of Ineffective Assistance of Counsel</u>

2          With respect to the procedural default of his claims of ineffective assistance of counsel in

3   Claims 1(I)(A), 1(II)(A), 1(II)(B), 1(II)(C), 3(I)(C), 3(II)(B), 4, 5, 6, 7(II)(A), 7(II)(B), 10, 11 and 12,

4   Castillo argues, relying upon *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272

5   (2012), that ineffective assistance of counsel in his first state habeas action was cause for his

6   procedural default.  *See* Opposition to Motion to Dismiss, pp. 96-149.[4] [5] [6]

7          In *Martinez*, the Supreme Court noted that it previously held, in *Coleman v. Thompson*, 501

8   U.S. 722, 746-47 (1991), that "an attorney's negligence in a postconviction proceeding does not

9   establish cause" to excuse procedural default.  *Martinez*, 132 S.Ct. at 1319.  The Court in *Martinez*

10  "qualif[ied] *Coleman* by recognizing a narrow exception:  inadequate assistance of counsel at

11  initial-review collateral proceedings may establish cause for a prisoner's procedural default of a

12  claim of ineffective assistance at trial."  *Id*. at 1315.  The Court described "initial-review collateral

13  proceedings" as "collateral proceedings which provide the first occasion to raise a claim of

14  ineffective assistance at trial."  *Id*.

15         Here, however, Castillo's assertion under *Martinez*, that ineffective assistance of counsel in

16  his first state habeas action was the cause of his procedural default, under the state statute of

17  limitations, in his second state habeas action, is flawed.  In *Martinez*, the petitioner's procedural

18  default was based on an Arizona rule barring successive petitions; as such, the petitioner's

19  procedural default was complete when his counsel in the initial-review collateral proceeding failed to

20

21         [4] Castillo does not appear to attempt to show cause under *Martinez* with respect his procedural
22  default of the ineffective assistance of counsel claims he asserts in Claims 2 and 14.

23         [5] Castillo makes this argument with respect to Claim 3(II)(C) as well but, as is discussed below,
    the court finds that Claim 3(II)(C) is not procedurally defaulted, so his argument is moot with regard to
24  Claim 3(II)(C).

25         [6] Castillo also makes this argument with respect to Claims 3(I)(A), 3(I)(B), 3(II)(A), 13, 15
    and 16; however, there are no claims of ineffective assistance of counsel pled in Claims 3(I)(A), 3(I)(B),
26  3(II)(A), 13, 15 and 16 in Castillo's second amended petition.  *See* Second Amended Petition, pp. 113-
    23, 185-207, 210-16.  *Martinez* only applies to claims of ineffective assistance of trial or appellate
    counsel.  *See Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013).

1    raise claims. *See Martinez*, 132 S.Ct. at 1314. The procedural default at issue here is different.

2    Castillo's procedural default was grounded on the state statute of limitations, NRS 34.726. The

3    procedural default occurred because Castillo delayed for more than ten years after his direct appeal

4    ended on April 28, 1999 -- and for almost five years after the appeal in his first state habeas action

5    ended on October 27, 2004 -- before initiating his second state habeas action on September 18, 2009.

6    The attorney who represented Castillo in his first state habeas action represented Castillo only until

7    late 2004, while Castillo's first state habeas action was pending; that was only part of the time over

8    which the statute of limitations default occurred. Ineffective assistance of Castillo's first state post-

9    conviction counsel cannot explain the last five years of the delay. In essence, there is an insufficient

10   causal connection between the alleged ineffective assistance of Castillo's first post-conviction

11   counsel and the procedural default. As a matter of equity, this court does not accept Castillo's

12   assertion of ineffective assistance of his counsel in his first state habeas action as cause for his failure

13   to comply with the state statute of limitations in his second state habeas action. *See Nguyen*, 763

14   F.3d at 1289 ("The Supreme Court in *Martinez* established an equitable rule under which the failure

15   of an ineffective counsel or pro se petitioner to raise, in a state court initial-review collateral

16   proceeding, a claim of ineffective assistance of counsel ('IAC') at trial can be 'cause' to excuse a

17   state-court procedural default."). Ineffective assistance of counsel in Castillo's first state habeas

18   action does not function as cause for the procedural default of the claims of ineffective assistance of

19   counsel in Claims 1(I)(A), 1(II)(A), 1(II)(B), 1(II)(C), 3(I)(C), 3(II)(B), 3(II)(C), 4, 5, 6, 7(II)(A),

20   7(II)(B), 10, 11 and 12.

21        Castillo requests an evidentiary hearing concerning his argument that he can show cause and

22   prejudice for the procedural default of his ineffective assistance of counsel claims, because of

23   ineffective assistance of counsel in his first state habeas action. *See* Motion for Evidentiary Hearing,

24   pp. 3-8. However, the court's rulings in this regard -- that ineffective assistance of Castillo's counsel

25   in his first state habeas action cannot explain the long delay that led to his default under NRS 34.726

26   in his second state habeas action, and that there is an insufficient causal connection between the

42

1    alleged ineffective assistance of Castillo's counsel in his first state habeas action and the procedural

2    default at issue -- do not turn on any question of fact.  There is no showing of any need for an

3    evidentiary hearing.

4                      Claim-Specific Analysis of Procedural Default

5                                       Claim 1

6              In Claim 1(I)(A), Castillo claims that he was denied his federal constitutional rights because

7    his trial counsel was ineffective in the guilt phase of his trial with regard to handling of the jury

8    selection process, and his appellate counsel was ineffective for not raising this issue.  *See* Second

9    Amended Petition, pp. 30-31.  Castillo did not raise such a claim on his direct appeal or in his first

10   state habeas action.  *See* Respondents' Exhibits 108 (opening brief on direct appeal), 111 (reply brief

11   on direct appeal), 130 (first state habeas petition), 155 (supplemental brief in support of first state

12   habeas petition), 168 (second supplemental brief in support of first state habeas petition).  This claim

13   was raised for the first time, in state court, in Castillo's second state habeas action.  *See*

14   Respondent's Exhibit 222, pp. 24-25.  The Nevada Supreme Court, however, ruled the claim

15   procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents'

16   Exhibit 268.  Claim 1(I)(A) is subject to dismissal on procedural default grounds.

17           Claim 1(I)(B) is a claim that Castillo was denied his federal constitutional rights because his

18   trial counsel was ineffective in the guilt phase of his trial for failure to present a psychological

19   defense.  *See* Second Amended Petition, pp. 31-35.  Castillo raised such a claim in his first state

20   habeas action.  *See* Exhibits 130, 155, 168.  Respondents do not contend that Claim 1(I)(B) is

21   procedurally defaulted.  *See* Motion to Dismiss, pp. 23-25; Reply in Support of Motion to Dismiss,

22   pp. 37-38.

23           Claim 1(II)(A) is a claim that Castillo was denied his federal constitutional rights because his

24   trial counsel was ineffective for failure to investigate, identify, and present mitigating evidence.  *See*

25   Second Amended Petition, pp. 35-96. Castillo did not raise such a claim on his direct appeal or in his

26   first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised

1   for the first time, in state court, in Castillo's second state habeas action. *See* Respondent's Exhibit

2   222, pp. 28-79. The Nevada Supreme Court, however, ruled the claim procedurally barred in that

3   action under NRS 34.726. *See* Order of Affirmance, Respondents' Exhibit 268. Claim 1(II)(A) is

4   subject to dismissal on procedural default grounds.

5        Claim 1(II)(B) is a claim that Castillo was denied his federal constitutional rights because his

6   trial counsel was ineffective in the penalty phase of his trial for failure to object to improper

7   vouching of third party witnesses. *See* Second Amended Petition, pp. 96-98. This claim concerns

8   the testimony of prosecution witnesses Michael Eylar and Paul Ehlers, and trial counsel's alleged

9   ineffective performance in failing to object to the testimony of those witnesses. *See id*. Castillo did

10  not raise such a claim on his direct appeal or in his first state habeas action. *See* Respondents'

11  Exhibits 108, 111, 130, 155, 168. This claim was raised for the first time, in state court, in Castillo's

12  second state habeas action. *See* Respondent's Exhibit 222, pp. 79-80. The Nevada Supreme Court,

13  however, ruled the claim procedurally barred in that action under NRS 34.726. *See* Order of

14  Affirmance, Respondents' Exhibit 268. Claim 1(II)(B) is subject to dismissal on procedural default

15  grounds.

16       Claim 1(II)(C) is a claim that Castillo was denied his federal constitutional rights because his

17  trial counsel was ineffective in the penalty phase of his trial for failure to adequately prepare

18  witnesses for cross-examination. *See* Second Amended Petition, pp. 98-104. Castillo did not raise

19  such a claim on his direct appeal or in his first state habeas action. *See* Respondents' Exhibits 108,

20  111, 130, 155, 168. This claim was raised for the first time, in state court, in Castillo's second state

21  habeas action. *See* Respondent's Exhibit 222, pp. 80-86. The Nevada Supreme Court, however,

22  ruled the claim procedurally barred in that action under NRS 34.726. *See* Order of Affirmance,

23  Respondents' Exhibit 268. Claim 1(II)(C) is subject to dismissal on procedural default grounds.

24                           <u>Claim 2</u>

25       In Claim 2 of his second amended habeas petition, Castillo claims that his federal

26  constitutional rights were violated because the prosecutors used the same acts to support a conviction

44

for first degree murder and to support one or more aggravating factors, and trial and appellate

counsel were ineffective for failing to raise this issue.  *See* Second Amended Petition, pp. 107-12.

Castillo did not raise such a claim on his direct appeal or in his first state habeas action.  *See*

Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised for the first time, in state

court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222, pp. 88-91.  The

Nevada Supreme Court, however, ruled the claim procedurally barred in that action under

NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.

Castillo argues that, on the appeal in his second state habeas action, in its order denying

rehearing, the Nevada Supreme Court ruled on the merits of this claim, or, alternatively, Castillo

argues that the Nevada Supreme Court's ruling was not independent of federal law, in that it

involved consideration of the merits of the federal constitutional claim.  *See* Opposition to Motion to

Dismiss, pp. 75-79.  "[T]he independent state grounds doctrine bars the federal courts from

reconsidering the issue in the context of habeas corpus review as long as the state court explicitly

invokes a state procedural bar rule as a separate basis for its decision." *Moran v. McDaniel*, 80 F.3d

1261, 1269 (1996), quoting *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).  So long as

the state court clearly indicates that its decision rests on independent and adequate state grounds,

federal review of the claim is precluded.  *See Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th

Cir.1994), cert. denied, 513 U.S. 1183 (1995).  However, the Nevada Supreme Court's dismissal of

this claim was on procedural grounds.  *See* Order of Affirmance, Respondents' Exhibit 268; Order

Denying Rehearing, Respondents' Exhibit 270.  Although the Nevada Supreme Court did address the

merits of the claim in its order denying rehearing, it is plain that the court did so only to demonstrate

that Castillo could not overcome the procedural bar by a showing that there was a fundamental

miscarriage of justice because he was actually innocent of the death penalty.  *See* Order Denying

Rehearing, Respondents' Exhibit 270, p. 1 ("Although we deny rehearing, Castillo's claim that this

court overlooked his argument that he was actually innocent of the death penalty warrants further

discussion.").  Under Nevada law, a petitioner may overcome a procedural bar by showing that the

45

1    bar would result in a fundamental miscarriage of justice.  *See Pellegrini v. State*, 117 Nev. 860, 34

2    P.3d 519, 537 (Nev. 2001).  The Nevada Supreme Court's consideration of the merits of the claim in

3    the course of ruling on Castillo's attempt to overcome the procedural bar by means of an assertion of

4    actual innocence did not undermine the independence of the procedural bar.  Where a state court

5    considers the merits of a claim only to demonstrate that the petitioner cannot overcome the

6    procedural bar, the procedural bar remains independent of federal law, such that it supports

7    application of the procedural default doctrine.  *See Nitschke v. Belleque*, 680 F.3d 1105, 1111-12

8    (9th Cir. 2012) (holding that the Oregon Court of Appeals' application of the Oregon "plain error"

9    rule to the petitioner's federal law claim was independent of federal law); *Moran*, 80 F.3d at 1268-70

10   (holding a Nevada state rule independent where the Nevada Supreme Court discussed the merits of

11   the claim "strictly for the purpose of demonstrating that [the petitioner could not] overcome his

12   procedural defaults by a showing of cause and prejudice").

13          However, as he did in state court, Castillo asserts in this court that failure to consider this

14   claim on the merits will result in a fundamental miscarriage of justice because he is actually innocent

15   of the death penalty.  *See* Opposition to Motion to Dismiss, pp. 20-22.  A procedurally defaulted

16   claim may be heard on its merits in federal habeas if the petitioner demonstrates that failure to

17   consider the claim will result in a "fundamental miscarriage of justice," which means that a

18   constitutional violation has probably resulted in the conviction of one who is actually innocent.

19   *Murray*, 477 U.S. at 496.  A procedurally defaulted claim may be heard under the miscarriage of

20   justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable

21   juror would have found [the petitioner] guilty beyond a reasonable doubt.'"  *United States v. Avery*,

22   719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327).  This is an extremely

23   demanding standard that "permits review only in the 'extraordinary' case."  *House v. Bell*, 547 U.S.

24   518, 538 (2006).  As is discussed above, the court has determined that the question whether Castillo

25   can make a showing of actual innocence sufficient to overcome the statute of limitations bar of this

26   claim will be better addressed in conjunction with the merits of Castillo's remaining claims, after

1   respondents file an answer and Castillo a reply, and, therefore, the court will deny respondents'

2   motion to dismiss, based on the statute of limitations, with respect to this claim, without prejudice to

3   respondents raising the statute of limitations as a defense to the claim in their answer, and without

4   prejudice to Castillo asserting his claim of actual innocence to overcome the statute of limitations bar

5   of the claim in his reply.  The court will take the same approach to the question whether Castillo can

6   make a showing of actual innocence to overcome the procedural default of this claim.  The court will

7   deny respondents' motion to dismiss Claim 2 based on procedural default, without prejudice to

8   respondents raising procedural default as a defense to the claim in their answer, and without

9   prejudice to Castillo asserting his claim of actual innocence, to overcome the procedural default of

10  the claim, in his reply.

11                                                    Claim 3

12           In Claim 3(I)(A), Castillo claims that his federal constitutional rights were violated because,

13  in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding the elements

14  of first degree murder.  *See* Second Amended Petition, pp. 113-18.  This claim concerns the trial

15  court's use of the so-called "*Kazalyn* instruction" a jury instruction approved in 1992 by the Nevada

16  Supreme Court in *Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992), and disapproved by the same

17  court eight years later in *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000).  *See id*.  Castillo did

18  not raise such a claim on his direct appeal or in his first state habeas action.  *See* Respondents'

19  Exhibits 108, 111, 130, 155, 168.  This claim was raised for the first time, in state court, in Castillo's

20  second state habeas action.  *See* Respondent's Exhibit 222, pp. 92-96.  The Nevada Supreme Court,

21  however, ruled the claim procedurally barred in that action under NRS 34.726.  *See* Order of

22  Affirmance, Respondents' Exhibit 268.

23           Castillo argues that, on the appeal in his second state habeas action, the Nevada Supreme

24  Court ruled on the merits of this claim, or, alternatively, Castillo argues that the Nevada Supreme

25  Court's ruling was not independent of federal law, in that it involved consideration of the merits of

26  the federal constitutional claim.  *See* Opposition to Motion to Dismiss, pp. 66-75.  As with Claim 2,

                                                        47

1    however, the Nevada Supreme Court's dismissal of this claim was clearly on procedural grounds.

2    *See* Order of Affirmance, Respondents' Exhibit 268.  The Nevada Supreme Court addressed the

3    merits of the claim, but it is plain that the court did so only to demonstrate that Castillo could not

4    overcome the procedural bar by a showing that there was a fundamental miscarriage of justice

5    because he was actually innocent.  *See* Order of Affirmance, Respondents' Exhibit 268, pp. 5-8.  The

6    Nevada Supreme Court's consideration of the merits of the claim in the course of ruling on Castillo's

7    attempt to overcome the procedural bar by means of an assertion of actual innocence did not

8    undermine the independence of the procedural bar.  Where a state court considers the merits of a

9    claim only to demonstrate that the petitioner cannot overcome the procedural bar, the procedural bar

10   remains independent of federal law, such that it supports application of the procedural default

11   doctrine.  *See Nitschke*, 680 F.3d at 1111-12; *Moran*, 80 F.3d at 1268-70.

12          However, as he did in state court, Castillo asserts in this court that failure to consider this

13   claim on the merits will result in a fundamental miscarriage of justice because he is actually

14   innocent.  *See* Opposition to Motion to Dismiss, pp. 20-22.  As is discussed above, the court has

15   determined that the question whether Castillo can make a showing of actual innocence sufficient to

16   overcome the statute of limitations bar of this claim will be better addressed in conjunction with the

17   merits of Castillo's remaining claims, after respondents file an answer and Castillo a reply, and,

18   therefore, the court will deny respondents' motion to dismiss, based on the statute of limitations,

19   with respect to this claim, without prejudice to respondents raising the statute of limitations as a

20   defense to the claim in their answer, and without prejudice to Castillo asserting his claim of actual

21   innocence to overcome the statute of limitations bar of the claim in his reply.  The court will take the

22   same approach to the question whether Castillo can make a showing of actual innocence to overcome

23   the procedural default of this claim.  The court will deny respondents' motion to dismiss

24   Claim 3(I)(A) based on procedural default, without prejudice to respondents raising procedural

25   default as a defense to the claim in their answer, and without prejudice to Castillo asserting his claim

26   of actual innocence, to overcome the procedural default of the claim, in his reply.

1    In Claim 3(I)(B), Castillo claims that his federal constitutional rights were violated because,

2    in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding reasonable

3    doubt.  *See* Second Amended Petition, pp. 118-20.  Castillo did not raise such a claim on his direct

4    appeal or in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This

5    claim was raised for the first time, in state court, in Castillo's second state habeas action.  *See*

6    Respondent's Exhibit 222, pp. 96-97.  The Nevada Supreme Court, however, ruled the claim

7    procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents'

8    Exhibit 268.  Claim 3(I)(B) is subject to dismissal on procedural default grounds.

9    In Claim 3(I)(C), Castillo claims that his federal constitutional rights were violated because,

10   in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding malice

11   aforethought, and appellate counsel was ineffective for failing to raise this issue.  *See* Second

12   Amended Petition, pp. 120-21.  Castillo did not raise such a claim on his direct appeal or in his first

13   state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised for

14   the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222,

15   pp. 97-99.  The Nevada Supreme Court, however, ruled the claim procedurally barred in that action

16   under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 3(I)(C) is subject to

17   dismissal on procedural default grounds.

18   In Claim 3(II)(A), Castillo claims that his federal constitutional rights were violated because,

19   in the penalty phase of his trial, the trial court failed to give a presumption of life instruction.  *See*

20   Second Amended Petition, pp. 121-23.  Castillo did not raise such a claim on his direct appeal or in

21   his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was

22   raised for the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's

23   Exhibit 222, pp. 99-100.  The Nevada Supreme Court, however, ruled the claim procedurally barred

24   in that action under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim

25   3(II)(A) is subject to dismissal on procedural default grounds.

26

In Claim 3(II)(B), Castillo claims that his federal constitutional rights were violated because, in the penalty phase of his trial, the trial court failed to properly instruct the jury regarding reasonable doubt, and trial counsel was ineffective for failing to raise this issue. *See* Second Amended Petition, p. 123. Castillo did not raise such a claim on his direct appeal or in his first state habeas action. *See* Respondents' Exhibits 108, 111, 130, 155, 168. This claim was raised for the first time, in state court, in Castillo's second state habeas action. *See* Respondent's Exhibit 222, p. 100. The Nevada Supreme Court, however, ruled the claim procedurally barred in that action under NRS 34.726. *See* Order of Affirmance, Respondents' Exhibit 268. Claim 3(II)(B) is subject to dismissal on procedural default grounds.

In Claim 3(II)(C), Castillo claims that his federal constitutional rights were violated because, in the penalty phase of his trial, the trial court failed to instruct the jury that it could consider other bad act evidence only after it found that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt, and appellate counsel was ineffective for failing to raise this issue. *See* Second Amended Petition, pp. 123-24. Castillo made such a claim in his first state habeas action. *See* Respondents' Exhibit 191, pp. 38-41; Respondents' Exhibit 197, pp. 8-11. The Nevada Supreme Court addressed the claim on its merits. *See* Order of Affirmance, Respondents' Exhibit 198, pp. 6-7. Claim 3(II)(C) is not procedurally defaulted.

<u>Claim 4</u>

In Claim 4, Castillo claims that his federal constitutional rights were violated because the prosecutor's non-statutory aggravating evidence included juvenile offenses and juvenile misconduct, and trial and appellate counsel were ineffective for failing to raise this issue. *See* Second Amended Petition, pp. 125-40. Castillo did not raise such a claim on his direct appeal or in his first state habeas action. *See* Respondents' Exhibits 108, 111, 130, 155, 168. This claim was raised for the first time, in state court, in Castillo's second state habeas action. *See* Respondent's Exhibit 222, pp. 101-14. The Nevada Supreme Court, however, ruled the claim procedurally barred in that action

50

under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 4 is subject to

dismissal on procedural default grounds.

Claim 5

In Claim 5, Castillo claims that his federal constitutional rights were violated, in the penalty

phase of his trial, as a result of presentation of criminal juvenile records, and trial counsel was

ineffective for failing to raise this issue.  *See* Second Amended Petition, pp. 141-54.  Castillo did not

raise such a claim on his direct appeal or in his first state habeas action.  *See* Respondents' Exhibits

108, 111, 130, 155, 168.  This claim was raised for the first time, in state court, in Castillo's second

state habeas action.  *See* Respondent's Exhibit 222, pp. 115-25.  The Nevada Supreme Court,

however, ruled the claim procedurally barred in that action under NRS 34.726.  *See* Order of

Affirmance, Respondents' Exhibit 268.  Claim 5 is subject to dismissal on procedural default

grounds.

Claim 6

In Claim 6, Castillo claims that his federal constitutional rights were violated because

prosecutors introduced evidence in the penalty phase of trial that Castillo held racist "white

supremacist" beliefs, and trial and appellate counsel were ineffective for failing to raise this issue.

*See* Second Amended Petition, pp. 155-60.  Castillo did not raise such a claim on his direct appeal or

in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was

raised for the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's

Exhibit 222, pp. 126-30.  The Nevada Supreme Court, however, ruled the claim procedurally barred

in that action under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 6 is

subject to dismissal on procedural default grounds.

Claim 7

In Claim 7(II)(A), Castillo claims that his federal constitutional rights were violated, in the

penalty phase of his trial, because the prosecutor identified mitigating factors that Castillo did not

raise or introduce evidence to support, and trial and appellate counsel were ineffective for failing to

51

raise this claim.  *See* Second Amended Petition, pp. 161-63, 165-66.  Castillo did not raise such a claim on his direct appeal or in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised for the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222, pp. 131-33.  The Nevada Supreme Court, however, ruled the claim procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 7(II)(A) is subject to dismissal on procedural default grounds.

In Claim 7(II)(B), Castillo claims that his federal constitutional rights were violated, in the penalty phase of his trial, because the prosecutor argued that Castillo was an improbable candidate for rehabilitation, and trial and appellate counsel were ineffective for failing to raise this claim.  *See* Second Amended Petition, pp. 163-66.  Castillo did not raise such a claim on his direct appeal or in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised for the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222, p. 133.  The Nevada Supreme Court, however, ruled the claim procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 7(II)(B) is subject to dismissal on procedural default grounds.

In Claim 7(II)(C), Castillo claims that his federal constitutional rights were violated, in the penalty phase of his trial, because the prosecutor forced jurors to choose between executing Castillo or an innocent future victim, and trial and appellate counsel were ineffective for failing to raise this claim.  *See* Second Amended Petition, pp. 164-6.  Castillo raised such a claim in his first state habeas action.  *See* Exhibits 130, 155, 168.  Respondents do not contend that Claim 7(II)(C) is procedurally defaulted.  *See* Motion to Dismiss, pp. 23-25; Reply in Support of Motion to Dismiss, pp. 37-38.

Claim 8

In Claim 8(II)(A), Castillo claims that the prosecutors introduced irrelevant and prejudicial victim impact evidence during the guilt phase of the trial.  *See* Second Amended Petition, pp. 167-69.  This claim concerns the testimony of Jean Marie Hosking, the victim's daughter, during the guilt phase of the trial.  *See id*.  Castillo contends that, during the guilt phase of the trial, the prosecution

1   improperly elicited testimony from Hosking regarding the health and state of mind of the victim, and

2   introduced, through Hosking, a photograph of the victim and her granddaughter.  *See id*.

3         On his direct appeal, Castillo asserted a claim that it was error for the trial court to admit, in

4   the guilt phase of the trial, through Hosking's testimony, the photograph of the victim and her

5   granddaughter.  *See* Respondents' Exhibit 108, pp. 28-31; Respondents' Exhibit 111, pp. 4-7.  In that

6   briefing on his direct appeal, however, Castillo did not assert that the prosecution improperly elicited

7   testimony from Hosking regarding the health and state of mind of the victim.  *See id*.

8         In his second state habeas action, Castillo asserted a claim like the one asserted in Claim

9   8(II)(A), with both the allegations regarding the testimony of Hosking about the victim's health and

10  state of mind and the introduction into evidence of the photograph of the victim and her

11  granddaughter.  *See*  Respondent's Exhibit 222, p. 135-37.  The Nevada Supreme Court, however,

12  ruled Castillo's second state habeas action barred by the statute of limitations, NRS 34.726.  *See*

13  Order of Affirmance, Respondents' Exhibit 268.

14        Therefore, the court determines that, to the extent that Claim 8(II)(A) is based on the

15  introduction into evidence of the photograph of the victim and her granddaughter, it is not

16  procedurally defaulted.  On the other hand, to the extent that Claim 8(II)(A) is based on the

17  testimony of Hosking about the victim's health and state of mind, it is procedurally defaulted, and

18  subject to dismissal on that ground.

19        In Claim 8(IV), Castillo claims that the prosecutors introduced unduly prejudicial victim

20  impact testimony during the penalty phase of the trial.  *See*  Second Amended Petition, pp. 169-72.

21  This claim concerns penalty-phase testimony of Jean Marie Hosking, as well as penalty-phase

22  testimony of Lisa Keimach and Ronda LaLicata, the victim's granddaughters.  *See id*.  On his direct

23  appeal, Castillo asserted a claim that it was error for the trial court to admit in the penalty phase of

24  the trial, to the extent it did, the victim impact testimony of Hosking, Keimach, and LaLicata.  *See*

25  Respondents' Exhibit 108, pp. 41-45; Respondents' Exhibit 111, p. 12.  The court determines,

26  therefore, that Claim 8(IV) is not procedurally defaulted.

1

Claim 9

2          In Claim 9, Castillo claims that his federal constitutional rights were violated because the

3    trial judge allowed the prosecutor to elicit testimony regarding Castillo's other criminal acts.

4    *See* Second Amended Petition, pp. 174-76.  This claim concerns guilt-phase testimony of

5    prosecution witness Harry Kumma, Jr.  *See id*.  Castillo asserted such a claim on his direct appeal.

6    *See* Respondents' Exhibit 108, pp. 32-35; Respondents' Exhibit 111, pp. 7-8. Respondents do not

7    contend that Claim 9 is procedurally defaulted.  *See* Motion to Dismiss, pp. 23-25; Reply in Support

8    of Motion to Dismiss, pp. 37-38.

9

Claim 10

10          In Claim 10, Castillo claims that his federal constitutional rights were violated because of the

11    trial court's failure to record critical proceedings, and trial counsel was ineffective for failing to raise

12    this issue.  *See* Second Amended Petition, pp. 177-78.  Castillo did not raise such a claim on his

13    direct appeal or in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.

14    This claim was raised for the first time, in state court, in Castillo's second state habeas action.  *See*

15    Respondent's Exhibit 222, pp. 143-44.  The Nevada Supreme Court, however, ruled the claim

16    procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents'

17    Exhibit 268.  Claim 10 is subject to dismissal on procedural default grounds.

18

Claim 11

19          In Claim 11, Castillo claims that his federal constitutional rights were violated because

20    Nevada's deadly weapon enhancement statute was vague and over-broad, and trial and appellate

21    counsel were ineffective for failing to raise this issue.  *See* Second Amended Petition, pp. 179-81.

22          On the appeal in his first state habeas action, Castillo asserted his claim that Nevada's deadly

23    weapon enhancement statute was vague and over-broad.  *See* Respondents' Exhibit 191, pp. 31-38.

24    The Nevada Supreme Court ruled that claim procedurally barred, under NRS 34.810, because

25    Castillo did not raise the claim on his direct appeal.  *See* Order of Affirmance, Respondents' Exhibit

26    198, pp. 9-10.  However, the court rules, above, that the procedural rule barring successive petitions,

54

in NRS 34.810, was not adequate to support application of the procedural default doctrine in this federal habeas action.  Therefore, this part of Claim 11 -- the claim that Nevada's deadly weapon enhancement statute was vague and over-broad -- is not subject to dismissal as procedurally defaulted.

However, on the appeal in his first state habeas action, Castillo did not raise the ineffective assistance of counsel part of this claim.  *See* Respondents' Exhibit 191, pp. 31-38.  Castillo argued, in his reply brief on that appeal, that his trial and appellate counsel were ineffective for failing to claim that Nevada's deadly weapon enhancement statute was vague and over-broad, but he did so only in an attempt to overcome the procedural bar.  *See* Appellant's Reply Brief, Respondents' Exhibit 197, pp. 11-13.  Castillo did not, in his first state habeas action, assert, as a freestanding claim for habeas corpus relief, that his trial and appellate counsel were ineffective for failing to claim that Nevada's deadly weapon enhancement statute was vague and over-broad.  *See* Petition for Writ of Habeas Corpus (Post-Conviction), Respondents' Exhibit 130; Supplemental Brief in Support of Defendant's Petition for Writ of Habeas Corpus (Post-Conviction), Respondents' Exhibit 155; Appellants Opening Brief, Exhibit 191.  This claim of ineffective assistance of counsel was raised for the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222, pp. 145-47.  The Nevada Supreme Court, however, ruled the claim procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  This part of Claim 11 -- asserting that Castillo's trial and appellate counsel were ineffective for failing to claim that Nevada's deadly weapon enhancement statute was vague and over-broad -- is subject to dismissal on procedural default grounds.

## Claim 12

In Claim 12, Castillo claims that his federal constitutional rights were violated because his sentence was enhanced based on Nevada's deadly weapon enhancement statute when neither the jury verdict nor the indictment supported such enhancement, and trial and appellate counsel were ineffective for failing to raise this issue.  *See* Second Amended Petition, pp. 182-84.  Castillo did not

raise such a claim on his direct appeal or in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised for the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222, pp. 148-49.  The Nevada Supreme Court, however, ruled the claim procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 12 is subject to dismissal on procedural default grounds.

<u>Claim 13</u>

In Claim 13, Castillo claims that his federal constitutional rights were violated because Nevada's lethal injection scheme constitutes cruel and unusual punishment.  *See* Second Amended Petition, pp. 185-207.  Castillo asserted such a claim on the appeal in his first state habeas action.  *See* Respondents' Exhibit 191, pp. 49-52.  The Nevada Supreme Court ruled that claim procedurally barred, under NRS 34.810, because Castillo did not raise the claim on his direct appeal.  *See* Order of Affirmance, Respondents' Exhibit 198, pp. 9-10.  However, the court rules, above, that the procedural rule barring successive petitions, in NRS 34.810, was not adequate to support application of the procedural default doctrine in this federal habeas action.  Therefore, Claim 13 is not subject to dismissal as procedurally defaulted.

<u>Claim 14</u>

In Claim 14, Castillo claims that his death sentence is in violation of his federal constitutional rights due to the restrictive conditions on Nevada's death row and delay caused by ineffective assistance of his trial and appellate counsel, and appellate counsel was ineffective for failing to raise this issue.  *See* Second Amended Petition, pp. 208-09.  Castillo did not raise such a claim on his direct appeal or in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised for the first time, in state court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222, pp. 168-69.  The Nevada Supreme Court, however, ruled the claim procedurally barred in that action under NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 14 is subject to dismissal on procedural default grounds.

<span>1</span> <u>Claim 15</u>

<span>2</span>    In Claim 15, Castillo claims that his federal constitutional rights were violated because his

<span>3</span> trial, sentencing, and review on direct appeal were conducted before state judicial officers whose

<span>4</span> tenure in office was not dependent on good behavior but was rather dependent on popular election,

<span>5</span> and who failed to conduct fair and adequate appellate review.  *See* Second Amended Petition,

<span>6</span> pp. 210-15.  Castillo did not raise such a claim on his direct appeal or in his first state habeas action.

<span>7</span> *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was raised for the first time, in state

<span>8</span> court, in Castillo's second state habeas action.  *See* Respondent's Exhibit 222, pp. 170-71.  The

<span>9</span> Nevada Supreme Court, however, ruled the claim procedurally barred in that action under

<span>10</span> NRS 34.726.  *See* Order of Affirmance, Respondents' Exhibit 268.  Claim 15 is subject to dismissal

<span>11</span> on procedural default grounds.

<span>12</span> <u>Claim 16</u>

<span>13</span>    In Claim 16, Castillo claims that his federal constitutional rights were violated because of the

<span>14</span> arbitrariness of Nevada's capital sentencing scheme.  *See* Second Amended Petition, p. 216.  Castillo

<span>15</span> asserted such a claim on the appeal in his first state habeas action.  *See* Respondents' Exhibit 191,

<span>16</span> pp. 53-57.  The Nevada Supreme Court ruled that claim procedurally barred, under NRS 34.810,

<span>17</span> because Castillo did not raise the claim on his direct appeal.  *See* Order of Affirmance, Respondents'

<span>18</span> Exhibit 198, pp. 9-10.  However, the court rules, above, that the procedural rule barring successive

<span>19</span> petitions, in NRS 34.810, was not adequate to support application of the procedural default doctrine

<span>20</span> in this federal habeas action.  Therefore, Claim 16 is not subject to dismissal as procedurally

<span>21</span> defaulted.

<span>22</span> <u>Claim 17</u>

<span>23</span>    In Claim 17, Castillo claims that his federal constitutional rights were violated because

<span>24</span> executing a mental ill, cognitively distressed individual constitutes cruel and unusual punishment.

<span>25</span> *See* Second Amended Petition, pp. 217-24.  Castillo did not raise such a claim on his direct appeal or

<span>26</span> in his first state habeas action.  *See* Respondents' Exhibits 108, 111, 130, 155, 168.  This claim was

1   raised for the first time, in state court, in Castillo's second state habeas action. *See* Respondent's

2   Exhibit 222, pp. 173-78. The Nevada Supreme Court, however, ruled the claim procedurally barred

3   in that action under NRS 34.726. *See* Order of Affirmance, Respondents' Exhibit 268. Claim 17 is

4   subject to dismissal on procedural default grounds.

5                                                                    Claim 18

6           In Claim 18, Castillo claims that his federal constitutional rights were violated because the

7   trial judge, in his instructions to the jury, and the prosecutor, during arguments, limited the jury's

8   consideration of Castillo's theory of mitigating factors. *See* Second Amended Petition, pp. 225-27.

9           On his direct appeal, Castillo asserted the part of this claim that is based on the trial court's

10  refusal to instruct the jury regarding non-statutory mitigating circumstances alleged by Castillo.

11  *See* Exhibit 108, pp. 49-50; Respondents' Exhibit 111, p. 14. That part of Claim 18 is not

12  procedurally defaulted.

13          On the other hand, the part of this claim based on the prosecution's closing arguments was

14  raised for the first time, in state court, in Castillo's second state habeas action. *See* Respondent's

15  Exhibit 222, pp. 179-81. The Nevada Supreme Court, however, ruled the claim procedurally barred

16  in that action under NRS 34.726. *See* Order of Affirmance, Respondents' Exhibit 268. The part of

17  Claim 18 based on the prosecution's closing arguments is subject to dismissal on procedural default

18  grounds.

19                                                                    Claim 19

20          In Claim 19, Castillo claims that his federal constitutional rights were violated because of the

21  cumulative errors in his trial, appeal and state post-conviction proceedings. *See* Second Amended

22  Petition, p. 228. Castillo's cumulative error claim is not subject to dismissal on procedural default

23  grounds, as it incorporates claims that are not procedurally defaulted.

24                                    Summary of Rulings Regarding Procedural Default

25          The court concludes that the following claims in Castillo's second amended petition for writ

26  of habeas corpus are subject to dismissal as barred by procedural default doctrine: Claims 1(I)(A),

                                                                        58

1(II)(A), 1(II)(B), 1(II)(C), 3(I)(B), 3(I)(C), 3(II)(A), 3(II)(B), 4, 5, 6, 7(II)(A), 7(II)(B), 8(II)(A)(to the extent based on Hosking's testimony about the health and state of mind of the victim), 10, 11(to the extent based on alleged ineffective assistance of counsel), 12, 14, 15, 17 and 18(to the extent based on the prosecution's closing arguments).

The court finds that Claims 2 and 3(I)(A) were procedurally barred in state court, pursuant to an independent and adequate state procedural rule, but, as Castillo asserts that he can overcome the procedural default of those claims by a showing of actual innocence, the court will address the question whether those two claims are subject to dismissal on procedural default grounds after the parties fully brief the merits of those two claims, as well as all Castillo's remaining claims.

The court concludes that the following claims are not subject to dismissal on procedural default grounds:  Claims 1(I)(B), 3(II)(C), 7(II)(C), 8(II)(A)(to the extent based on introduction, through Hosking's testimony, of the photograph of the victim and her granddaughter), 8(IV), 9, 11(to the extent based on claim that Nevada's deadly weapon enhancement statute was vague and over-broad), 13, 16, 18(to the extent based on jury instructions) and 19.

Cognizability of Claims

Respondents argue in their motion to dismiss that certain claims asserted by Castillo in his second amended petition are not cognizable in this federal habeas corpus action.  *See* Motion to Dismiss, pp. 25-27.

Ineffective Assistance of Post-Conviction Counsel

Respondents argue that Castillo's claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel in his state habeas proceedings do not state cognizable claims.  *See* Motion to Dismiss, p. 25.

In response, Castillo "concedes that the United States Supreme Court has not yet recognized a constitutional right to the effective assistance of counsel in state habeas proceedings...." Opposition to Motion to Dismiss, pp. 149-50.

1    There is no federal constitutional right to the effective assistance of counsel in state post-

2  conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999

3  F.2d 425, 430 (9th Cir. 1993).  As is discussed above, the Supreme Court has established an

4  equitable exception to the procedural default doctrine based on ineffective assistance of post-

5  conviction counsel (*see Martinez*, 132 S. Ct. 1309), but the Court's ruling in *Finley*, that there is no

6  freestanding constitutional right to effective assistance of counsel in post-conviction proceedings,

7  remains the law.

8    Therefore, all Castillo's claims are subject to dismissal to the extent they are based on alleged

9  ineffective assistance of counsel in his state habeas proceedings.

10               International Covenant on Civil and Political Rights

11    Respondents argue that Castillo's claims based on violation of the International Covenant on

12  Civil and Political Rights, do not state cognizable claims.  *See* Motion to Dismiss, pp. 25-26.

13    In response, Castillo "concedes that there are federalist limitations regarding the applicability

14  of the International Covenant...."  Opposition to Motion to Dismiss, p. 150.

15    Castillo's second amended petition does not offer any support for a contention that any

16  provision of the International Covenant on Civil and Political Rights is enforceable on federal habeas

17  corpus review.  The Ninth Circuit has held that "customary international law is not a source of

18  judicially enforceable private rights in the absence of a statute conferring jurisdiction over such

19  claims."  *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010).  The court determines that Castillo's

20  claims of violation of the International Covenant on Civil and Political Rights are not cognizable in

21  this federal habeas action.

22    Therefore, all Castillo's claims are subject to dismissal to the extent that they are based on

23  alleged violation of the International Covenant on Civil and Political Rights.

24               Motion for Leave to Conduct Discovery

25    As the court understands Castillo's motion for leave to conduct discovery (ECF No. 161),

26  Castillo requests leave of court, under Rule 6 of the Rules Governing Section 2254 Cases in the

United States District Courts, with respect to the merits of Claim 1(II)(A), and, to a lesser extent, with respect to the merits of Claims 1(I)(B), 5, 6, and 7(II)(B).

As is discussed above, the court rules Claim 1(II)(A) subject to dismissal on both statute of limitations and procedural default grounds.  The court, therefore, determines that there is no showing of good cause for discovery with respect to that claim.

The court also rules Claims 5, 6 and 7(II)(B) subject to dismissal on both statute of limitations and procedural default grounds, and the court, therefore, determines that there is no showing of good cause for discovery with respect to those claims, as well.

With regard to Claim 1(I)(B), Castillo's claim that his trial counsel was ineffective for failure to present a psychological defense, that claim was denied on its merits in Castillo's first state habeas action.  *See* Order of Affirmance, Respondents' Exhibit 198, pp. 7-9.  The United States Supreme Court has ruled "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  This generally means that, with respect to a claim adjudicated on the merits in state court, evidence not presented in the state courts may not be introduced on federal habeas corpus review, so long as the factual findings of the state court were not unreasonable.  *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).  On the present record, in light of *Pinholster*, there is no showing of good cause for Castillo to undertake discovery with regard to Claim 1(I)(B).  The court will deny Castillo's motion for leave to conduct discovery with regard to that claim, without prejudice to his making a new motion for such discovery in conjunction with his briefing of the merits of the claim.

The court, therefore, will deny Castillo's motion for leave to conduction discovery.

///

///

///

///

///

Conclusion

**IT IS THEREFORE ORDERED** that respondents' Motion to Dismiss Second Amended Petition (ECF No. 140) is **GRANTED IN PART AND DENIED IN PART**.  The following claims in petitioner's second amended habeas corpus petition (dkt. no. 126) are dismissed: Claims 1(I)(A), 1(II)(A), 1(II)(B), 1(II)(C), 3(I)(B), 3(I)(C), 3(II)(A), 3(II)(B), 4, 5, 6, 7(II)(A), 7(II)(B), 8(II)(A)(to the extent based on Hosking's testimony about the health and state of mind of the victim), 10, 11(to the extent based on alleged ineffective assistance of counsel), 12, 14, 15, 17 and 18(to the extent based on the prosecution's closing arguments).  All petitioner's claims are dismissed to the extent they are based on alleged ineffective assistance of counsel in his state habeas proceedings.  All petitioner's claims are dismissed to the extent that they are based on alleged violation of the International Covenant on Civil and Political Rights.  In all other respects, the motion to dismiss is denied.

**IT IS FURTHER ORDERED** that petitioner's Motion for an Evidentiary Hearing (ECF No. 156) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's Motion for Leave to Conduct Discovery (ECF No. 161) is **DENIED**.

**IT IS FURTHER ORDERED** that respondents shall file an answer within **90 days** from the entry of this order, responding to the remaining claims in petitioner's second amended habeas corpus petition (dkt. no. 126), which are Claims 1(I)(B), 2, 3(I)(A), 3(II)(C), 7(II)(C), 8(II)(A)(to the extent based on introduction, through Hosking's testimony, of the photograph of the victim and her granddaughter), 8(IV), 9, 11(to the extent based on claim that Nevada's deadly weapon enhancement statute was vague and over-broad), 13, 16, 18(to the extent based on jury instructions) and 19.

Dated this 2nd day of March, 2016.

_____
UNITED STATES DISTRICT JUDGE