1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **DISTRICT OF NEVADA**

7

8

9 WILLIAM P. CASTILLO,

10        Petitioner,                             2:04-cv-00868-RCJ-GWF

11 vs.

                                          **ORDER**

12 TIMOTHY FILSON, *et al.*,

13        Respondents.

14 _____/

15

16 <u>Introduction</u>

17      In this capital habeas corpus action, the respondents filed their answer on August 1, 2016,

18 (ECF No. 189), the petitioner, William P. Castillo, filed his reply on December 23, 2016 (ECF No.

19 195), and the respondents filed a response to Castillo's reply on May 12, 2017 (ECF No. 215).

20 Castillo's remaining claims for habeas corpus relief are, therefore, fully briefed, and under

21 submission to the Court.

22      On December 23, 2017, Castillo also filed four motions: a motion for partial reconsideration

23 of the Court's order of March 2, 2016 (ECF No. 196); a motion for evidentiary hearing (ECF No.

24 201); a motion for leave to supplement his second amended habeas petition (ECF No. 199); and a

25 motion for stay and abeyance (ECF No. 198). Each of those motions is fully briefed and before the

26 Court.

Motion for Reconsideration and Motion for Evidentiary Hearing

In his motion for reconsideration (ECF No. 196), Castillo requests reconsideration of the Court's ruling, in its March 2, 2016 order (ECF No. 184), that he did not show cause and prejudice, under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), for his procedural default of certain of his claims in state court. *See* Order entered March 2, 2016 (ECF No. 184), pp. 41-43. Respondents filed an opposition to that motion on May 16, 2017 (ECF No. 217). Castillo replied on June 15, 2017 (ECF No. 220).

The Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as the court has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis and quotation omitted).

The ruling in the Court's March 2, 2016 order that Castillo challenges is the following:

> With respect to the procedural default of his claims of ineffective assistance of counsel in Claims 1(I)(A), 1(II)(A), 1(II)(B), 1(II)(C), 3(I)(C), 3(II)(B), 4, 5, 6, 7(II)(A), 7(II)(B), 10, 11 and 12, Castillo argues, relying upon *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), that ineffective assistance of counsel in his first state habeas action was cause for his procedural default. *See* Opposition to Motion to Dismiss, pp. 96-149.
>
> In *Martinez*, the Supreme Court noted that it previously held, in *Coleman v. Thompson*, 501 U.S. 722, 746-47 (1991), that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse procedural default. *Martinez*, 132 S.Ct. at 1319. The Court in *Martinez* "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.*
>
> Here, however, Castillo's assertion under *Martinez*, that ineffective assistance of counsel in his first state habeas action was the cause of his procedural default, under the state statute of limitations, in his second state habeas action, is flawed. In *Martinez*, the petitioner's procedural default was based on an Arizona rule barring successive petitions; as such, the petitioner's procedural default was complete when his counsel in the initial-review collateral proceeding failed to raise claims. *See Martinez*, 132 S.Ct. at 1314. The procedural default at issue here is different. Castillo's procedural default was grounded on the state statute of limitations, NRS 34.726. The procedural default occurred because Castillo delayed for more than ten years after his direct appeal ended on April 28, 1999 -- and for almost five years after the appeal in his first state habeas action ended on October 27, 2004 -- before

2

1  initiating his second state habeas action on September 18, 2009. The attorney who
   represented Castillo in his first state habeas action represented Castillo only until late
2  2004, while Castillo's first state habeas action was pending; that was only part of the
   time over which the statute of limitations default occurred. Ineffective assistance of
3  Castillo's first state post-conviction counsel cannot explain the last five years of the
   delay. In essence, there is an insufficient causal connection between the alleged
4  ineffective assistance of Castillo's first post-conviction counsel and the procedural
   default. As a matter of equity, this court does not accept Castillo's assertion of
5  ineffective assistance of his counsel in his first state habeas action as cause for his
   failure to comply with the state statute of limitations in his second state habeas action.
6  *See* [*Nguyen v. Curry*, 736 F.3d 1287, 1289 (9th Cir. 2013)] ("The Supreme Court in
   *Martinez* established an equitable rule under which the failure of an ineffective
7  counsel or pro se petitioner to raise, in a state court initial-review collateral
   proceeding, a claim of ineffective assistance of counsel ('IAC') at trial can be 'cause'
8  to excuse a state-court procedural default."). Ineffective assistance of counsel in
   Castillo's first state habeas action does not function as cause for the procedural
9  default of the claims of ineffective assistance of counsel in Claims 1(I)(A), 1(II)(A),
   1(II)(B), 1(II)(C), 3(I)(C), 3(II)(B), 3(II)(C), 4, 5, 6, 7(II)(A), 7(II)(B), 10, 11 and 12.
10

11     Castillo requests an evidentiary hearing concerning his argument that he can
   show cause and prejudice for the procedural default of his ineffective assistance of
12 counsel claims, because of ineffect assistance of counsel in his first state habeas
   action. *See* Motion for Evidentiary Hearing, pp. 3-8. However, the court's rulings in
13 this regard -- that ineffective assistance of Castillo's counsel in his first state habeas
   action cannot explain the long delay that led to his default under NRS 34.726 in his
14 second state habeas action, and that there is an insufficient causal connection between
   the alleged ineffective assistance of Castillo's counsel in his first state habeas action
15 and the procedural default at issue -- do not turn on any question of fact. There is no
   showing of any need for an evidentiary hearing.

16 Order entered March 2, 2016 (ECF No. 184), pp. 41-43 (footnotes omitted).

17     Castillo waited more than nine months, and until more than four months after the respondents

18 filed their answer, before seeking reconsideration of this ruling in the Court's March 2, 2016, order.

19 While neither the Federal Rules of Civil Procedure nor the local rules of this Court set a limit on the

20 time for seeking reconsideration of an interlocutory order, such a motion must, in this Court's view,

21 be made within a reasonable time. There is no apparent reason -- such as a change in the law or

22 discovery of new facts -- explaining Castillo's delay. The Court finds that Castillo unreasonably

23 delayed in seeking reconsideration of the March 2, 2016, order, and the Court will deny the motion

24 on that ground.

25     Additionally, however, the Court determines that Castillo does not show that reconsideration

26 is warranted. In his motion for reconsideration, Castillo argues that the Court "refused to consider

1   his allegations of cause-and-prejudice under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). *See* Motion

2   for Partial Reconsideration (ECF No. 196), pp. 1, 3. That is an inaccurate characterization of the

3   Court's order. The Court considered, but rejected, Castillo's assertion of cause and prejudice under

4   *Martinez*. Castillo also argues that the Court ruled that "*Martinez* does not apply to state statute of

5   limitation default bars." *See id*. at 5-8. That argument, too, is plainly inaccurate. The Court did not

6   rule that *Martinez* does not apply to state statute of limitations bars; rather, the Court ruled that, as a

7   matter of equity, Castillo's particular assertion of cause and prejudice under *Martinez* fails.

8   It is undisputed that the exception to the rule of *Coleman v. Thompson*, 501 U.S. 722 (1991),

9   established by *Martinez*, is equitable in nature. *See Martinez*, 132 S.Ct. at 1318 ("Allowing a federal

10   habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or

11   the absence of an attorney) caused a procedural default in an initial-review collateral proceeding

12   acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken

13   without counsel or with ineffective counsel, may not have been sufficient to ensure that proper

14   consideration was given to a substantial claim."); *see also* Motion for Partial Reconsideration, pp. 4,

15   6, 9 (repeatedly recognizing that *Martinez* rule is a matter of equity). This Court's ruling was that, as

16   a matter of equity, Castillo's assertion of ineffective assistance of counsel in his first state habeas

17   action as cause for his failure to comply with the state statute of limitations failed because "Castillo

18   delayed for more than ten years after his direct appeal ended on April 28, 1999 -- and for almost five

19   years after the appeal in his first state habeas action ended on October 27, 2004 -- before initiating

20   his second state habeas action on September 18, 2009." Order entered March 2, 2016 (ECF No.

21   184), p. 42. Ineffective assistance of Castillo's counsel in his first state habeas action was not the

22   cause of much of the delay in Castillo's filing of his second state habeas action.

23   Moreover, it is notable that, had Castillo initiated his second state habeas action within a

24   reasonable amount of time after the conclusion of his first state habeas action, he might have

25   overcome the state-law statute of limitations bar by showing ineffective assistance of counsel in his

26   first state habeas action. *See* Order of Affirmance, Exhibit 268, pp. 3-5 (ECF No. 144-12, pp. 4-6);

4

1  *see also Crump v. Warden*, 934 P.2d 247, 253 (Nev. 1997) (in Nevada capital cases, where

2  postconviction counsel is appointed pursuant to statutory mandate, the petitioner is entitled to

3  effective assistance of counsel, and ineffective assistance of that counsel may function as cause to

4  overcome a procedural default); *Hathaway v. State*, 71 P. 3d 503, 505-08 (Nev. 2003) (claim of

5  cause relative to a procedural bar, based on performance of counsel, may be made within reasonable

6  time). Castillo's failure to initiate his second state habeas action within a reasonable time cannot be

7  attributed to any failing of his counsel in his first state habeas action.

8      Castillo does not show that the Court should reconsider its ruling; the Court will deny the

9  motion for reconsideration.

10     In his motion for evidentiary hearing, Castillo requests an evidentiary hearing "to develop

11 Castillo's allegations of cause and prejudice for the delay in raising his IAC claims under *Martinez v.*

12 *Ryan*, 132 S.Ct. 1309 (2012)." Motion for Evidentiary Hearing (ECF No. 201), p. 3. The Court's

13 ruling regarding Castillo's attempt to show cause for his procedural default, under *Martinez*, does not

14 turn on any disputed issue of fact. Castillo does not demonstrate any need for an evidentiary hearing.

15 His motion for evidentiary hearing will be denied.

16 Motion for Leave to Supplement and Motion for Stay

17     On December 23, 2016, Castillo filed a Motion for Leave to Supplement the Second

18 Amended Petition (ECF No. 199). In that motion, Castillo requests leave of court to add two claims

19 to his petition: a claim, based on *Hurst v. Florida*, 136 S.Ct. 616 (2016), that it was a violation of

20 his constitutional rights for the Nevada Supreme Court to reweigh aggravating and mitigating factors

21 after striking two of the four aggravating factors found by the jury; and a claim that the "avoid and

22 prevent lawful arrest" aggravating factor, one of the two remaining aggravating factors considered in

23 the Nevada Supreme Court's reweighing, is invalid because it was not supported by sufficient

24 evidence, and is impermissibly vague and overbroad. Castillo filed the proposed additional claims in

25 a document entitled "Supplement to Second Amended Petition for Writ of Habeas Corpus

26

(ECF No. 200).  Respondents filed an opposition to petitioner's motion on February 16, 2017
(ECF No. 69).  Petitioner replied on February 23, 2017 (ECF No. 70).

On December 23, 2017, Castillo also filed a Motion for Stay and Abeyance (ECF No. 198).
In that motion, Castillo requests that this Court stay this action while he returns to state court to
exhaust his state-court remedies with respect to his *Hurst* claim.  Respondents filed an opposition to
that motion on April 6, 2017 (ECF No. 209), and Castillo replied on April 12, 2017 (ECF No. 214).

A petition for a writ of habeas corpus "may be amended or supplemented as provided in the
rules of procedure applicable to civil actions."  28 U.S.C. § 2242; *see also* Rule 12, Rules Governing
Section 2254 Cases (Rules of Civil Procedure apply to federal habeas proceedings "to the extent that
they are not inconsistent.").  Federal Rule of Civil Procedure 15(a) permits a party to amend a
pleading with the opposing party's written consent or the court's leave.  *See* Fed. R. Civ. P. 15(a)(2).
"The court should freely give leave when justice so requires."  *Id.*  "Courts may decline to grant
leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the
part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue
prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment,
etc.'"  *Sonoma County. Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th
Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[T]he consideration of prejudice
to the opposing party carries the greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d
1048, 1052 (9th Cir. 2003).

In *Rhines v. Weber*, 544 U.S. 269 (2005), the stay and abeyance procedure was condoned by
the Supreme Court as a means by which a habeas petitioner with a mixed petition subject to
dismissal under *Rose v. Lundy*, 455 U.S. 509 (1982), could fully exhaust his petition without the risk
of running afoul of the one-year statutory time limit for filing federal petitions.  *See Rhines*, 544 U.S.
at 276.  The *Rhines* Court cautioned, however, that stay and abeyance, if too frequently used, would
undermine AEDPA's goals of prompt resolution of claims and deference to state court rulings.  *Id.*
The Court held that, in order to obtain "stay and abeyance," a petitioner must show:  (1) good cause

1 for the failure to exhaust claims in state court, (2) that the unexhausted claims are potentially
2 meritorious, and (3) the absence of abusive tactics or intentional delay. *Id.*; *see also Jackson v. Roe*,
3 425 F.3d 654, 662 (9th Cir. 2005).

4       With respect to Castillo's request for leave of court to add to his petition a claim based on
5 *Hurst*, and his request for a stay while he exhausts that claim in state court, the Court determines that
6 Castillo's *Hurst* claim is not potentially meritorious, amendment of his petition to add that claim
7 would be futile, and a stay is unwarranted.

8       In *Hurst*, the Supreme Court held that Florida's capital sentencing scheme violated the Sixth
9 Amendment right to a jury trial because, under the scheme, the jury rendered an advisory verdict but
10 the judge ultimately found the facts necessary to impose a sentence of death. *See Hurst*, 136 S.Ct. at
11 624. In reaching that holding, the Court relied upon *Ring v. Arizona*, 536 U.S. 584 (2002), which
12 held that any fact necessary for the imposition of the death penalty must be found by a jury, not a
13 judge. *See Ring*, 536 U.S. at 589. *Ring* and *Hurst* are both based on *Apprendi v. New Jersey*, 530
14 U.S. 466 (200), which held that any fact that "expose[s] the defendant to a greater punishment than
15 that authorized by the jury's guilty verdict" is an "element" that must be submitted to a jury.
16 *Apprendi*, 530 U.S. at 494.

17       Although a jury imposed the death penalty in Castillo's case, Castillo claims that his death
18 sentence is unconstitutional under *Hurst* because, on the appeal in one of his state habeas actions, the
19 Nevada Supreme Court struck two aggravating factors found by the jury, reweighed the remaining
20 aggravating factors and the mitigating factors, and affirmed the state district court's denial of relief.
21 Castillo reasons that, under *Hurst*, the weighing of aggravating and mitigating factors is an
22 "element" that must be submitted to the jury and that cannot constitutionally be subject to
23 reweighing by an appellate court.

24       Castillo's claim extends the holding in *Hurst* beyond its cognizable bounds. Neither *Ring*
25 nor *Hurst* holds that the weighing of aggravating and mitigating circumstances is an "element" that
26 must be submitted to the jury. The Court in *Ring* noted that "[t]he State's law authorizes the judge to

7

1  sentence the defendant to death only if there is at least one aggravating circumstance and 'there are

2  no mitigating circumstances sufficiently substantial to call for leniency.'" *Ring*, 536 U.S. at 593.

3  Yet, the *Ring* Court identified only the existence of an aggravating circumstance as an "element" that

4  must be found by a jury to impose the death penalty. *Ring*, 536 U.S. at 589.

5       The Court in *Hurst* concluded that Florida's capital sentencing scheme was unconstitutional

6  because it "required the judge alone to find the existence of an aggravating circumstance." *Hurst*,

7  136 S.Ct. at 624.  The Court in *Hurst* made clear that it was overruling its prior cases upholding

8  Florida's capital sentencing scheme (*Spaziano v. Florida*, 468 U.S. 447 (1984), and *Hildwin v.*

9  *Florida*, 490 U.S. 638 (1989)) "to the extent they allow a sentencing judge to find an aggravating

10  circumstance, independent of a jury's factfinding, that is necessary for imposition of the death

11  penalty." *Hurst*, 136 S.Ct. at 624.  The import of *Hurst* is its holding that the jury's advisory role

12  under Florida law fell short of complying with the Sixth Amendment requirement of *Apprendi* and

13  *Ring*.  *Hurst* did not break new ground with respect to what determinations qualify as "elements"

14  that must be submitted to a jury.  Indeed, this Court views the determination that there are no

15  mitigating circumstances sufficient to outweigh the aggravating circumstances to be a matter of

16  subjective judgment that is not amenable to proof beyond a reasonable doubt.  Moreover, *Hurst* did

17  not, either explicitly or implicitly, overrule *Clemons v. Mississippi*, 494 U.S. 738 (1990), which

18  approved of appellate court reweighing of the aggravating and mitigating factors remaining after the

19  court strikes an invalid aggravating factor.  In short, the Court finds meritless Castillo's claim that

20  his rights were violated by the Nevada Supreme Court's reweighing of the aggravating and

21  mitigating circumstances in his case.

22       Furthermore, even assuming, for purposes of analysis, that the Supreme Court's holding in

23  *Hurst* represents a new rule supporting Castillo's claim -- this Court finds that it does not -- the

24  Ninth Circuit Court of Appeals recently held that any such new rule drawn from *Hurst* would not

25  apply retroactively to cases on collateral review, such as Castillo's.  *See Ybarra v. Filson*, ___ F.3d

26  ___, 2017 WL 3811118, pp. 11-14 (9th Cir., September 1, 2017).  In *Ybarra*, the court of appeals

8

1     assumed for the sake of argument, as this Court does, that *Hurst* "creates a new rule," "establishes

2     that the 'weighing determination' is an element," and "renders the Nevada sentencing scheme

3     unconstitutional," but held that, "[n]evertheless, even after making these generous assumptions, [the

4     petitioner] cannot obtain relief under *Hurst*." *Id*. at 12.

5          This Court, then, determines that Castillo's claim based on *Hurst* has no potential for success

6     on its merits.   Therefore, the Court concludes that amendment of Castillo's petition to add that claim

7     would be futile, and a stay of this action to allow for state-court exhaustion of the claim is

8     unwarranted.

9          Turning to Castillo's motion to supplement his petition to add a claim that the avoid and

10    prevent lawful arrest aggravating factor, one of the two remaining aggravating factors considered in

11    the Nevada Supreme Court's reweighing, is invalid because it was not supported by sufficient

12    evidence, and is impermissibly vague and overbroad, the Court determines that that claim, as well,

13    has no potential for success on its merits, and the addition of the claim to Castillo's petition would

14    be futile.  In addition, the Court finds that Castillo unduly delayed in seeking to amend his petition to

15    add such a claim.

16         Castillo does not attempt explain why only now -- after this case has been pending for twelve

17    years; after a four-year exhaustion stay; after resolution of a motion to dismiss raising issues

18    concerning the statute of limitations, exhaustion of claims in state court, and procedural default; and

19    after respondents have filed their answer -- he seeks to add to his petition a claim challenging one of

20    the aggravating factors upon which his capital sentence was based.  Castillo has unduly delayed in

21    seeking to add this claim to his petition, and the Court will deny his motion to supplement, as to this

22    claim, on that basis. *See Bonin v. Calderon*, 59 F.3d 815, 844-45 (9th Cir. 1995) ("[W]e have held

23    that a district court does not abuse its discretion in denying a motion to amend where the movant

24    presents no new facts but only new theories and provides no satisfactory explanation for his failure

25    to fully develop his contentions originally.").

26

1    Furthermore, the Court finds that Castillo's challenge to the avoid or prevent lawful arrest

2  aggravating factor is belied by the record, and is meritless. In *Tuilaepa v. California*, 512 U.S. 967

3  (1994), the Supreme Court explained that an aggravating factor withstands a constitutional challenge

4  if it has some "common sense core of meaning ... that criminal juries should be capable of

5  understanding." *Tuilaepa*, 512 U.S. at 973-74 (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976)).

6  The "core meaning" of the avoid or prevent lawful arrest aggravating factor is readily

7  understandable. The statutory language, "to avoid or prevent a lawful arrest" (*see* NRS 200.033(5)),

8  is specific enough to avoid arbitrary and capricious imposition of the death penalty, and it

9  sufficiently narrows the class of defendants to which it applies. *See Wainwright v. Lockhart*, 80 F.3d

10  1226, 1231 (8th Cir. 1996) (upholding the validity of an Arkansas statute that the killing was

11  committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody);

12  *Davis v. Executive Director of Dept. of Corrections*, 100 F.3d 750, 769 (10th Cir. 1996) (holding

13  that Colorado's "avoiding or preventing lawful arrest or prosecution" sufficiently narrows the class

14  of persons eligible for the death penalty "by putting the focus on the purpose of the murder.").

15    Moreover, Castillo's argument that there was insufficient evidence to support application of

16  the avoid or prevent lawful arrest aggravating factor ignores evidence presented at his trial. Tammy

17  Bryant testified at Castillo's trial. *See* Transcript of Trial, September 3, 1996, Exhibit 65, pp. 47-79

18  (ECF No. 89-19, p. 49 - ECF No. 89-20, p. 32). Bryant was Castillo's girlfriend at the time of the

19  murder, and she lived with Castillo and his co-defendant, Michelle Platou. *See id.* at 48-49 (ECF

20  No. 89-19, pp. 50-51). Bryant testified that the morning after Castillo and Platou burglarized

21  Isabelle Berndt's home, and killed her, Castillo and Platou told Bryant what happened. *See id.* at 57-

22  60. Bryant testified as follows:

23        Q.    Did there come a time later that morning, say in the 9 or 10:00 in the
              morning area, when you had occasion to have a conversation with Michelle [Platou]
24            and William [Castillo] about the occurrences of that evening?

25        A.    Yes.

26        Q.    And where did that conversation take place?

1     A.     At our apartment?

2     Q.     And who was present?

3     A.     All three of us

4     Q.     Anyone else present?

5     A.     No.

6                     *    *    *

7     Q.     And did William Castillo or Michelle Bryant [sic] in William
Castillo's presence tell you what happened on the night of December 17th, 1995 that
8 would cause them to bring into your residence the items you've identified as the box,
the bag, and the VCR?

9

10     A.     Yes.

    Q.     What were you told?
11

12     A.     That they robbed this house.

    Q.     That they robbed a house?
13

14     A.     Yeah.

15                     *    *    *

16     Q.     Did they tell you about anything unusual that occurred when they
robbed the house?

17     A.     They said they went into the house and Michelle got the VCR and they
were looking for stuff, money, and it was really dark in there and they were going
18 down the hallway and Michelle said that there was two people in the house because
there were two pairs of shoes in the hallway.

19

20     Q.     You have to speak up and be a little bit slower.

21     A.     (Witness crying.)

    Okay, Michelle said there was two pairs of shoes in the house. When they
22 started down the hallway, it was dark and they got to the end of the hallway and Billy
went into the room.

23

    Q.     By Billy, you mean William Castillo?
24

25     A.     Yes.

26     Went into the room to check the nightstand to see if there was money in it and
Michelle had hit the wall or something and made a noise to wake the person up or

1   something and then, as the person was waking up, Billy hit the person and then
    Michelle started freaking out.  They both freaked out and left.
2
        Q.      When you say Billy hit the person, did he tell you what he hit her
3   with?

4       A.      With a tire iron.

5       Q.      This was a tire iron that he had retrieved from Michelle Platou's
    vehicle?
6
        A.      Yes.
7
        Q.      Before December 17th, 1995, did you know, of your own personal
8   knowledge, that Michelle Platou had a tire iron in her vehicle?

9       A.      Yes.

10      Q.      Did William Castillo tell you what he did with the tire iron after he had
    hit the lady with it?
11
        A.      Threw it in the garbage.
12
        Q.      Did he tell you where?
13
        A.      In a dumpster.
14                                          *    *    *
15
        Q.      After he hit the lady, Michelle and William left the residence that they
16  robbed?

17      A.      Oh, yes.

18      Q.      And they took with them the VCR and the silverware and the booties?

19      A.      Yes.

20      Q.      How about some cash?

21      A.      Yes.

22      Q.      How much cash?

23      A.      One hundred and fifty dollars I think.  Something like that.

24      Q.      Did they tell you why they left a second time?

25      A.      They went back to the house because Michelle's fingerprints were in
    there.
26

| | |
|---|---|
| 1 | Q.    They believed that Michelle had left fingerprints during the burglary of the house? |
| 2 | |
| 3 | A.    Yes. |
| 4 | Q.    And the second time they went back to do something about that? |
| 5 | A.    Yes. |
| 6 | Q.    And what were they going to do about that? |
| 7 | A.    Burn the house. |
| 8 | Q.    And when they talked to you at 9, 10:00 December 17th, did they tell you that they had burned the house? |
| 9 | A.    Yes. |

*Id.* at 56-60 (ECF No. 89-20, pp. 8-12). Bryant's testimony obviously supports a finding that Castillo killed Berndt in order to avoid arrest.

This Court determines that Castillo's proposed new claim, challenging the avoid or prevent lawful arrest aggravating factor, is meritless, such that amendment to add that claim to his petition would be futile, and that, at any rate, Castillo unduly delayed in requesting leave of court to add such a claim to his petition. The Court will deny Castillo leave of court to supplement his petition with this claim.

///
///
///
///
///
///
///
///
///
///

13

1    **IT IS THEREFORE ORDERED** that petitioner's Motion for Partial Reconsideration of
2  Procedural Order (ECF No. 196) is **DENIED**.

3    **IT IS FURTHER ORDERED** that petitioner's Second Motion for Evidentiary Hearing
4  (ECF No. 201) is **DENIED**.

5    **IT IS FURTHER ORDERED** that petitioner's Motion for Leave to Supplement the Second
6  Amended Petition (ECF No. 199) is **DENIED**.

7    **IT IS FURTHER ORDERED** that petitioner's Motion for Stay and Abeyance (ECF No.
8  198) is **DENIED**.

10    Dated this _18_ day of _September_, 2017.

12                                    _____
13                                    UNITED STATES DISTRICT JUDGE