UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WILLIAM P. CASTILLO,

    Petitioner,

v.

WILLIAM REUBART, *et al.*,

    Respondents.

Case No. 2:04-cv-00868-RCJ-EJY

ORDER

I.    <u>Summary</u>

    In this capital habeas corpus action, on January 14, 2019, this Court denied William P. Castillo's habeas petition and granted a certificate of appealability, and judgment was entered accordingly (ECF Nos. 231, 232). On September 16, 2019, this Court partially granted Castillo's motion to alter or amend judgment and expanded the certificate of appealability (ECF Nos. 246, 247). Castillo appealed (ECF Nos. 234, 248).

    On January 13, 2021, the Ninth Circuit Court of Appeals granted Castillo's unopposed motion for a stay and limited remand and remanded the case to this Court. *See* Order of Court of Appeals filed January 13, 2021 (ECF No. 251). The court of appeals ordered:

> On limited remand, the District Court will reconsider its relation back order, and its disposition of those claims, in light of intervening law. *See* Dist Ct 3/02/2016 Order (Dist Ct DE 184); *see Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020) (en banc).

*Id*. at 1.

    Therefore, on January 25, 2021, this Court set a schedule for the parties to file briefing on the limited remand. *See* Order entered January 25, 2021 (ECF No. 252).

The Court ordered that its review of this case on this limited remand would be limited to the issue identified by the court of appeals: the effect of intervening law on this Court's rulings in the order entered March 2, 2016 (ECF No. 184) regarding whether certain claims in Castillo's second amended habeas petition relate back to his original petition for purposes of the application of the statute of limitations. *Id.*

Castillo filed his opening brief on remand on May 25, 2021 (ECF No. 255). Respondents filed their answering brief on remand on June 23, 2022 (ECF No. 269). Castillo did not file a reply brief. *See* Order entered January 25, 2021 (ECF No. 252) (30 days to file reply brief).

In his opening brief on remand, Castillo argues that the Court should reconsider its ruling that Claims 1(II)(A), 1(II)(B), 3(I)(B), 3(I)(C), 3(II)(B), 4, 5, 17 and 19 of his second amended petition do not relate back to his original petition for purposes of application of the statute of limitations, and he argues that the Court should reconsider its ruling that Claims 1(II)(A), 1(II)(B), 3(I)(C), 3(II)(B), 4 and 5 are barred under the procedural default doctrine. *See* Opening Brief on Remand (ECF No. 255).

The Court determines that *Ross v. Williams*, 950 F.3d 1160 (9th Cir.) (en banc), *cert. denied sub nom. Daniels v. Ross*, 141 S. Ct. 840 (2020), does not change its prior conclusions that none of Claims 1(II)(A), 1(II)(B), 3(I)(B), 3(I)(C), 3(II)(B), 4, 5, or 17 relates back, or its conclusion regarding the extent to which the cumulative error claim in Claim 19 is barred by the statute of limitations, and the Court declines to reconsider its rulings regarding the procedural default of Claims 1(II)(A), 1(II)(B), 3(I)(C), 3(II)(B), 4 and 5.

II.    Discussion

    A.    Relation Back - Legal Principles - *Ross*

In the March 2, 2016, order resolving Respondents' motion to dismiss, the Court explained the background of the statute of limitations issue, and the reason the issue arises, as follows:

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), there is a one-year statute of limitations applicable to federal habeas corpus petitions. The statute provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D).

The petitioner is entitled to statutory tolling of the limitations period while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

*   *   *

Castillo's conviction became final on March 22, 1999, when the United States Supreme Court denied his petition for a writ of certiorari. *See Castillo v. Nevada*, 526 U.S. 1031 (1999); Letter Regarding Denial of Petition for Writ of Certiorari, Respondents' Exhibit 129. The one-year limitations period for Castillo's federal habeas petition began running on that date.

Castillo filed his first state habeas petition eleven days later, on April 2, 1999. There is no question that Castillo's first state habeas action was "properly filed," such that it tolled the limitations period, under 28 U.S.C. § 2244(d)(2), after only eleven days ran against the limitations period. Castillo's first state habeas action was concluded, and the statutory tolling ended, when the Nevada Supreme Court issued its

remittitur on October 27, 2004, after affirming the denial of relief in Castillo's action. *See* Remittitur, Respondents' Exhibit 211. The running of the limitations period resumed on that date.

Therefore, without any equitable tolling, the one-year limitations period ran out 354 days later, on October 16, 2005.

Castillo mailed his original *pro se* habeas petition to this court for filing on June 22, 2004, before the Nevada Supreme Court issued its remittitur, concluding Castillo's first state habeas action. *See* Petition for Writ of Habeas Corpus (ECF No. 1). Under the "mailbox rule," the court considers the petition to have been filed on that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts. Castillo's original petition in this action was unquestionably timely-filed.

However, without equitable tolling, Castillo's first amended petition, and his second amended petition, were untimely. The pendency of Castillo's federal habeas action did not toll the limitations period. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (no tolling for the pendency of a federal habeas petition). Castillo's first amended petition was filed on December 15, 2008, which was 1156 days—3 years, 1 month, and 29 days—after the limitations period expired. *See* First Amended Petition (ECF No. 70). Castillo's second amended petition was filed on May 19, 2014, which was 3137 days—8 years, 7 months, and 3 days—after the limitations period expired. *See* Second Amended Petition (ECF No. 126).

\* \* \*

The question of the timeliness of the claims asserted in Castillo's second amended petition turns on whether those claims relate back to the filing of Castillo's original petition.

Order entered March 2, 2016 (ECF No. 184), pp. 12–14.

On remand, the Court is to reconsider the relation back issue order in light of the intervening decision of the court of appeals in *Ross*. *See* Order of Court of Appeals filed January 13, 2021 (ECF No. 251). Specifically, Castillo asks the Court to reconsider its relation back analysis with regard to Claims 1(II)(A), 1(II)(B), 3(I)(B), 3(I)(C), 3(II)(B), 4, 5, 17 and 19 of his second amended petition. *See* Opening Brief on Remand (ECF No. 255).

In habeas cases, as in other civil cases, an amendment "relates back to the date of the original pleading when ... the amendment asserts a claim ... that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading…." Fed. R. Civ. P. 15(c)(1)(B). Even if the claim in the amended pleading

4

concerns the same trial and conviction as the original pleading, as is usually the case in habeas cases, the amendment does not relate back if it asserts a ground for relief supported by facts different from those set forth in the original pleading. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). In habeas cases, relation back depends on the "existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659. A habeas claim does not share a core of operative fact with an earlier petition when it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id*. at 649.

Therefore, the Court looks at the claims as pled in Castillo's second amended petition and assesses whether the core operative facts asserted in support of those claims were set forth in Castillo's original petition.

In *Ross*—the intervening authority that occasioned the remand—the court of appeals considered the question of relation back of an amended habeas petition to an original petition to which the petitioner had attached a a state supreme court order. The court concluded that claims in the amended petition could relate back to the original petition, by virtue of facts included in the document appended to the original petition:

> The foregoing authorities make plain that relation back is available under the circumstances presented here. If a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back.

*Ross*, 950 F.3d at 1167 (footnote omitted). The court emphasized, however, that, to support relation back, facts included in the document appended to the original petition must relate to a ground for relief asserted in the original petition:

> If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not "attempted to be set out" in that petition and cannot form a basis for relation back.

*Id*. at 1168. The court reinforced this point as follows:

> These commonsense procedures also dispose of any concern that petitioners could lay the groundwork for an endless host of claims unburdened by the statute of limitations merely by submitting a blank

petition and attaching a complete trial record or other voluminous filings. Such a petitioner would have failed to set out any claims in her original petition in the first place, and therefore could not incorporate corresponding facts under the rule we explain here.

*Id*. at 1173; *see also id* at 1172 n.17.

The court in *Ross* set forth a two-step analysis for assessing the issue of relation back in such cases:

We follow two steps to determine whether an amended petition relates back to an original petition that relied on an appended written instrument to help set forth the facts on which it based its claims. First, we determine what claims the amended petition alleges and what core facts underlie those claims. Second, for each claim in the amended petition, we look to the body of the original petition and its exhibits to see whether the original petition "set out" or "attempted to ... set out" a corresponding factual episode, *see* Fed. R. Civ. P. 15(c)(1)(B)—or whether the claim is instead "supported by facts that differ in both time and type from those the original pleading set forth," *Mayle*, 545 U.S. at 650, 664, 125 S.Ct. 2562.

*Id.* at 1167.

B.      Claim 1(II)(A)

In Claim 1(II)(A) of his second amended petition, Castillo claims that his federal constitutional rights were violated because of ineffective assistance of counsel on account of his trial counsel's failure to investigate, identify, and present mitigating evidence in the penalty phase of his trial. Second Amended Petition (ECF No. 126), pp. 35–96.

In the March 2, 2016, order resolving Respondents' motion to dismiss, this Court ruled:

No claim with the same core of operative facts as this claim was raised in Castillo's briefing on his direct appeal or in his briefing on the appeal in his first state habeas action, which briefing was incorporated into his original petition in this action. *See* Respondents' Exhibits 108, 111, 191, 197, and 198. Claim 1(II)(A) does not relate back to the filing of Castillo's original petition.

Order entered March 2, 2016 (ECF No. 184), p. 15.

In Castillo's original petition, where the form called for him to state his grounds for relief, Castillo stated:

> I allege that my state court conviction and/or sentence are unconstitutional, in violation of my Constitutional Rights, by incorporating herein the Constitutional claims contained in Exhibits 1 through 4 attached hereto.

Petition for Writ of Habeas Corpus (ECF No. 1), pp. 2–3. Castillo attached five exhibits to his original petition:

| | | |
|---|---|---|
| Exhibit 1 | - | Nevada Supreme Court's order affirming the denial of relief in Castillo's first state habeas action (ECF No. 1, pp. 6–15); |
| Exhibit 2 | - | Castillo's opening brief on his direct appeal (ECF No. 1, pp. 16–74); |
| Exhibit 3 | - | Castillo's reply brief on his direct appeal (ECF No. 1, pp. 77–97); |
| Exhibit 4 | - | Castillo's opening brief on the appeal in his first state habeas action (ECF No. 1, pp. 99–160); |
| Exhibit 5 | - | Castillo's reply brief on the appeal in his first state habeas action (ECF No. 1, pp. 162–78). |

*Id*. (ECF No. 1 at 6–178). In Exhibits 2 and 3, on his direct appeal, Castillo asserted the following claims:

1. It was error for the trial court to allow repeated and prejudicial reference to the booties knitted by the victim.

2. It was prejudicial error for the trial court to admit a photograph of the victim and her daughter and granddaughter at the trial.

3. The trial court should have granted the motion for mistrial after a state witness informed the jury that Castillo had another case.

4. Improper argument by the prosecution during the penalty hearing.

5. It was error to admit gruesome pictures taken at the autopsy.

6. Victim impact evidence should not have been admitted to the extent it was.

7. It was error to give an anti-sympathy instruction to the jury.

8. It was error for the trial court to refuse to instruct the jury on the defense theory of mitigating circumstances.

*Id*. (ECF No. 1 at 17, 22, 45–71, 79, 81–94). Exhibits 1, 4 and 5 reveal that on the appeal in his first state habeas action, Castillo asserted the following claims:

1.     Ineffective assistance of counsel.

2.     The prosecution presented improper argument during the penalty hearing, and his appellate counsel was ineffective for not challenging that argument on Castillo's direct appeal.

3.     A crowbar is not a deadly weapon.

4.     Castillo received ineffective assistance of counsel because his trial and appellate counsel failed to object to bad character evidence that was improperly presented to the jury in the penalty phase of the trial, and because they failed to challenge the jury instructions concerning the jury's consideration of such evidence.

5.     Castillo received ineffective assistance of counsel because his trial counsel failed to properly investigate his case and failed to present a defense in the guilt phase of the trial based upon "psychological difficulties" suffered by Castillo throughout his life.

6.     Castillo's conviction is unconstitutional because of cumulative error.

7.     The death penalty is cruel and unusual punishment.

8.     Lethal injection is cruel and unusual punishment.

9.     Castillo's conviction and sentence violate the international covenant on civil and political rights.

10.    Nevada capital punishment system operates in an arbitrary and capricious manner.

*Id*. (ECF No. 1 at 9–15, 104–05, 124–57, 165–76).

Castillo did not, on either his direct appeal or the appeal in his first state habeas action, assert a claim like that in Claim 1(II)(A), that is, a claim that his trial counsel was ineffective for failure to investigate, identify, and present mitigating evidence in the penalty phase of his trial. Therefore, in his original petition in this case, in which he incorporated the claims asserted on his direct appeal and the appeal in his first state habeas action—"I allege that my state court conviction and/or sentence are unconstitutional, in violation of my Constitutional Rights, by incorporating herein the Constitutional claims contained in Exhibits 1 through 4 attached hereto"—Castillo did not assert any such claim.

*Ross* does not affect the Court's conclusion that Claim 1(II)(A) does not relate back to Castillo's original petition. *Ross* made clear that, for relation back, facts found in

8

documents attached to, and incorporated into, an original petition must support a claim asserted in that petition. *See Ross*, 950 F.3d at 1167 ("If a petitioner attempts to set out habeas claims *by identifying specific grounds for relief in an original petition* and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back." (emphasis added)); *id.* at 1168 ("If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back."); *see also id.* at 1172 n.17, 1173. It is not enough that the petitioner can cherry-pick, from documents attached to an original petition, facts that arguably relate to a claim in the amended petition, but that are were not related to a claim in the original petition. That is the case here. Castillo points to facts mentioned in the documents attached to his original petition that can be characterized as related to Claim 1(II)(A); but there was no claim at all like Claim 1(II)(A) asserted in Castillo's original petition and supported by those facts.

In his brief on remand, Castillo points out that in his opening brief on the appeal in his first state habeas action, which was attached to his original petition in this case, he asserted a generic claim of ineffective assistance of counsel, without setting forth any facts supporting that claim in that section of the brief. *See* Opening Brief on Remand (ECF No. 255), p. 9; Petition for Writ of Habeas Corpus (ECF No. 1 at 124). However, the mere fact that there was a generic ineffective assistance of counsel claim in Castillo's initial petition, without any factual explanation, does not allow for relation back of Claim 1(II)(A), which is a claim of ineffective assistance of trial counsel on account of trial counsel's alleged failure to investigate, identify, and present mitigating evidence in the penalty phase of Castillo's trial. *See Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir. 2012) (holding that an original claim of ineffective assistance for failure to present a particular defense did not allow relation back of later claim of ineffective assistance for failure to present a different defense).

Castillo goes on to argue that, elsewhere in the opening brief on the appeal in his state habeas action, Castillo mentioned counsel's failure to present "compelling psychological evidence" *See* Opening Brief on Remand (ECF No. 255), pp. 9–10. That comment, however, was made in support of Castillo's claim that his trial counsel was ineffective for failing to present a defense in *the guilt phase of the trial* based upon psychological difficulties" suffered by Castillo. *See* Petition for Writ of Habeas Corpus (ECF No. 1 at 141–47). That's a far different claim from Claim 1(II)(A), and it was based on a different set of core operative facts.

Castillo also argues that, in the Nevada Supreme Court decision in his state habeas action, which was also attached to his original petition, the court summarized Castillo's mitigation presentation and mentioned Castillo's history of institutionalization and emotional disturbance. *See* Opening Brief on Remand (ECF No. 255), p. 10. But none of those facts mentioned in that decision were related to any claim asserted by Castillo. Again, simply cherry-picking factual statements out of a document attached to an original petition, without relating those facts to a claim made in that case, does not support relation back.

Castillo did not assert in his original petition a claim that his trial counsel was ineffective for failing to investigate, identify, and present mitigating evidence in the penalty phase of his trial, so there is no such claim in the original petition for Claim 1(II)(A) to relate back to, despite Castillo's identification of stray facts mentioned in the documents attached to the original petition. Claim 1(II)(A) does not relate back. The Court's conclusion in this regard is unaffected by *Ross*.

C.    Claim 1(II)(B)

Claim 1(II)(B) is a claim that Castillo was denied his federal constitutional rights because his trial counsel was ineffective in the penalty phase of his trial for failure to object to improper vouching by witnesses. Second Amended Petition (ECF No. 126), pp. 96–98. The claim concerns the testimony of prosecution witnesses Michael Eylar

1  and Paul Ehlers about Castillo's prior convictions, and trial counsel's alleged ineffective

2  performance in failing to object to that testimony. *See id*.

3  In the March 2, 2016, order resolving Respondents' motion to dismiss, this Court

4  ruled:

5  > No claim with the same core of operative facts as this claim was raised in
   > Castillo's briefing on his direct appeal or in his briefing on the appeal in his
6  > first state habeas action, which briefing was incorporated into his original
   > petition in this action. *See* Respondents' Exhibits 108, 111, 191, 197,
7  > and 198. Claim 1(II)(B) does not relate back to the filing of Castillo's
   > original petition.

8

9  Order entered March 2, 2016 (ECF No. 184), p. 15.

10  *Ross* does not affect the Court's conclusion that this claim does not relate back

11  to Castillo's original petition. Castillo did not, on either his direct appeal or the appeal in

12  his first state habeas action, assert a claim like that in Claim 1(II)(B). Therefore, in his

13  original petition in this case, in which he incorporated the claims asserted on his direct

14  appeal and the appeal in his first state habeas action, Castillo did not assert any such

15  claim.

16  Castillo argues that Claim 1(II)(B) relates back because, in his opening brief on

17  the appeal in his state habeas action, which was attached to his original petition, he

18  asserted a claim concerning evidence of prior bad conduct on his part. *See* Opening

19  Brief on Remand (ECF No. 255), pp. 11–12. But that claim was completely different

20  from Claim 1(II)(B). The claim on the appeal in Castillo's state habeas action was that

21  his counsel was ineffective for failing to object to the manner in which the jury was

22  instructed to consider such evidence. *See* Petition for Writ of Habeas Corpus (ECF No.

23  1 at 138–41). Claim 1(II)(B), on the other hand, is a claim that Castillo's trial counsel

24  was ineffective for failing to object to the manner in which evidence was presented, that

25  is, the testimony of witnesses Eylar and Ehlers. Those are different claims, based on

26  different operative facts—the jury instructions regarding consideration of the evidence

27  versus the manner of presentation of the evidence—and, therefore, Claim 1(II)(B) does

28  not relate back. *Ross* does not affect this conclusion.

D.   Claims 3(I)(B), 3(I)(C) and 3(II)(B)

In Claim 3(I)(B), Castillo claims that his federal constitutional rights were violated because, in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding reasonable doubt. Second Amended Petition (ECF No. 126), pp. 118–20. In Claim 3(I)(C), Castillo claims that his federal constitutional rights were violated because, in the guilt phase of his trial, the trial court failed to properly instruct the jury regarding malice aforethought, and appellate counsel was ineffective for failing to raise this issue. *Id.* at 120–21. And, in Claim 3(II)(B), Castillo claims that his federal constitutional rights were violated because, in the penalty phase of his trial, the trial court failed to properly instruct the jury regarding reasonable doubt, and trial counsel was ineffective for failing to raise this issue. *Id.* at 123.

In the March 2, 2016, order resolving Respondents' motion to dismiss, this Court ruled that none of these three claims relate back to Castillo's original petition, because they do not share a common core of operative fact with any claim asserted in the original petition. *See* Order entered March 2, 2016 (ECF No. 184), pp. 17–19. In making that determination, the Court considered the documents attached to Castillo's original petition. *See id.* The Court's conclusion in this regard is not affected by *Ross*.

In his brief on remand, Castillo points to the following sentence in his opening brief on the appeal in his state habeas action, which was attached to his original petition in this case:

> As the result of unconstitutional form jury instructions defining reasonable doubt, express malice and premeditation and deliberation, first degree murder convictions occur in the absence of proof beyond a reasonable doubt, in the absence of any rational showing of premeditation and deliberation, and as a result of the presumption of malice aforethought.

*See* Opening Brief on Remand (ECF No. 255), p. 12; Petition for Writ of Habeas Corpus (ECF No. 1 at 154). However, this conclusory allegation was made in support of a claim completely different from Claims 3(I)(B), 3(I)(C) and 3(II)(B): a claim that Nevada's capital punishment system does not adequately narrow the class of murders for which the death penalty may be imposed, and that, as a result, it functions in an arbitrary,

capricious and irrational manner. *See* Petition for Writ of Habeas Corpus (ECF No. 1 at 153–57). That conclusory allegation in Castillo's brief before the Nevada Supreme Court did not amount to a separate claim for the Nevada Supreme Court to adjudicate, or a claim incorporated into Castillo's original petition in this case.

Moreover, Castillo's allegation, in passing, in his brief before the Nevada Supreme Court, that certain jury instructions were unconstitutional, was completely unsupported by any explanation or factual allegations. *See* Petition for Writ of Habeas Corpus (ECF No. 1 at 154). Without any facts asserted in the appellate brief to support that bald allegation, there are no operative facts for Claims 3(I)(B), 3(I)(C) and 3(II)(B) to relate back to. Claims 3(I)(B), 3(I)(C) and 3(II)(B) do not relate back, and this conclusion is unaffected by *Ross*.

E.     Claims 4 and 5

In Claim 4, Castillo claims that his federal constitutional rights were violated because the prosecutor's non-statutory aggravating evidence included juvenile offenses and juvenile misconduct, and trial and appellate counsel were ineffective for failing to raise this issue. Second Amended Petition (ECF No. 126), pp. 125–41. In Claim 5, Castillo claims that his federal constitutional right of confrontation and other constitutional rights were violated, in the penalty phase of his trial, as a result of prosecution's presentation of his juvenile criminal records through witnesses other than those who created the records, and trial counsel was ineffective for failing to raise this issue. *Id*. at 141–54.

In the March 2, 2016, order resolving Respondents' motion to dismiss, this Court ruled that neither of these claims related back to Castillo's original petition, because they do not share a common core of operative fact with any claim asserted in the original petition. *See* Order entered March 2, 2016 (ECF No. 184), pp. 19–20. In making that determination, the Court considered the documents attached to Castillo's original petition. *See id*. The Court's conclusion in this regard is not affected by *Ross*.

In his brief on remand, Castillo points out that, in its order affirming the denial of his first state habeas petition, the Nevada Supreme Court discussed the evidence of his juvenile criminal record. *See* Opening Brief on Remand (ECF No. 255), p. 13; Petition for Writ of Habeas Corpus (ECF No. 1 at 7, 11, 13). However, that discussion of the evidence of Castillo juvenile criminal record, in the Nevada Supreme Court's decision, was in the context of claims completely unlike Claims 4 and 5, claims based on different operative facts.

Castillo also points to his summary of the evidence introduced at the penalty hearing, including the evidence regarding his juvenile criminal record, in his opening brief on the appeal in his state habeas action, which was attached to his original petition. *See* Opening Brief on Remand (ECF No. 255), pp. 13–14; Petition for Writ of Habeas Corpus (ECF No. 1 at 115–18). However, the mere mention of that evidence in that brief does not allow for relation back of Claims 4 and 5. As is discussed above, *Ross* makes clear that, for relation back, facts found in documents attached to, and incorporated into, an original petition must be related to a claim actually asserted in that petition. *See Ross*, 950 F.3d at 1168 ("If an exhibit to the original petition includes facts unrelated to the grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back."); *see also id*. at 1167, 1172 n.17, 1173.

Castillo also notes that, in his brief before the Nevada Supreme Court, he asserted a claim that his counsel was ineffective for failing to object to the manner in which the jury was instructed to consider the prosecution's evidence in the penalty phase of the trial. *See* Opening Brief on Remand (ECF No. 255), pp. 13–14; Petition for Writ of Habeas Corpus (ECF No. 1 at 138–41). That, though, is a different kind of claim from Claims 4 and 5, and it was based on far different operative facts.

Claims 4 and 5 do not relate back. *Ross* does not affect the Court's conclusion in this regard.

1    F.    <u>Claim 17</u>

2        In Claim 17, Castillo claims that his federal constitutional rights were violated

3    because executing a mental ill, cognitively distressed individual constitutes cruel and

4    unusual punishment. Second Amended Petition (ECF No. 126), pp. 217–24.

5        In the March 2, 2016, order resolving Respondents' motion to dismiss, this Court

6    ruled that this claim does not related back to Castillo's original petition, because "[n]o

7    claim with the same core of operative facts as this claim was raised in Castillo's briefing

8    on his direct appeal or in his briefing on the appeal in his first state habeas action, which

9    briefing was incorporated into his original petition in this action." Order entered March 2,

10    2016 (ECF No. 184), p. 25. The Court's conclusion in this regard is not affected by

11    *Ross*.

12        Castillo argues that Claim 17 relates back to his original petition because he

13    incorporated into that petition his opening brief on his direct appeal, in which he argued

14    that "death penalty statutes must be structured to prevent the penalty being imposed in

15    an arbitrary and unpredictable fashion." *See* Opening Brief on Remand (ECF No. 255),

16    p. 15; Petition for Writ of Habeas Corpus (ECF No. 1 at 67). But that argument was

17    made in the context of a claim that it was error for the trial court to give an "anti-

18    sympathy" instruction to the jury, a claim unlike Claim 17 and based on different

19    operative facts.

20        Next, Castillo points out that in his opening brief on the appeal from the denial of

21    relief in his state habeas action, which was attached to his original petition, he argued

22    that "the Nevada capital punishment system operates in an arbitrary and capricious

23    manner," and that "Nevada law fails to provide sentencing bodies with any rational

24    method for separating those few cases that warrant the imposition of the ultimate

25    punishment [from] the many that do not." *See* Opening Brief on Remand (ECF No. 255),

26    p. 15; Petition for Writ of Habeas Corpus (ECF No. 1 at 153–55). Castillo also points to

27    the Nevada Supreme Court's decision rejecting that argument. *See* Opening Brief on

28

Remand (ECF No. 255), p. 15; Petition for Writ of Habeas Corpus (ECF No. 1 at 153–55). That claim, too, is unlike Claim 17 and based on different operative facts.

Castillo goes on to point out that in the documents attached to his original petition, there were many references to his alleged mental illness. *See* Opening Brief on Remand (ECF No. 255), p. 15. The Court recognizes this, but, here again, those factual allegations are not related to any claim asserted in the original petition and based on operative facts in common with Claim 17. *See Ross*, 950 F.3d at 1167–68, 1172 n.17, 1173.

Claim 17 does not relate back. The Court's conclusion here is unaffected by *Ross*.

G.    Claim 19

In Claim 19 of his second amended petition, Castillo claims that his federal constitutional rights were violated because of the cumulative errors in his trial, appellate, and state post-conviction proceedings. Second Amended Petition (ECF No. 126), p. 228. With respect to this claim, in the March 2, 2016, order resolving Respondents' motion to dismiss, this Court ruled: "Castillo's cumulative error claim incorporates all his other claims; it relates back to his original petition, and is timely, to the extent that his other claims relate back and are timely." Order entered March 2, 2016 (ECF No. 184), p. 25. The Court's conclusion regarding this claim remains unchanged after *Ross*.

H.    Procedural Default

Finally, Castillo requests the Court to reconsider its rulings regarding the procedural default of Claims 1(II)(A), 1(II)(B), 3(I)(C), 3(II)(B), 4 and 5. *See* Opening Brief on Remand (ECF No. 255), pp. 17–21. That issue, though, was not part of the court of appeals' limited remand, so the Court declines to revisit it. *See* Order of Court of Appeals filed January 13, 2021 (ECF No. 251).

///

///

///

III.     Conclusion

**IT IS THEREFORE ORDERED** that the Court declines to reconsider its rulings that Claims 1(II)(A), 1(II)(B), 3(I)(B), 3(I)(C), 3(II)(B), 4, 5, 17 and 19 of the second amended petition do not relate back to the original petition for purposes of application of the statute of limitations, and that Claims 1(II)(A), 1(II)(B), 3(I)(C), 3(II)(B), 4 and 5 are barred under the procedural default doctrine. This order constitutes the final ruling of this Court on the limited remand of this case from the Ninth Circuit Court of Appeals.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to transmit a copy of this order to the Ninth Circuit Court of Appeals.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to administratively close this case.

DATED THIS 20th of September, 2022.

ROBERT C. JONES
UNITED STATES DISTRICT JUDGE